*THOMS v. KING.

(*Jackson.* May 23, 1895.)

1. DIVORCE. *Collateral attack of foreign decree for want of evidence ineffectual.*

A decree for divorce cannot be successfully attacked collaterally in the courts of another State for lack of proof of residence of petitioner as required by statute, where it appears, from the certified record of the divorce proceedings that the petition averred the necessary residence, and the decree recited, in general terms, proof of the allegations of the petition, but the record failed to disclose any evidence of residence, or that it contained all the evidence heard in the case. (*Post, pp. 64–66.*)

Cases cited and approved: Martin v. Porter, 4 Heis., 416; Greenlaw v. Kernahan, 4 Sneed, 370.

2. SAME. *Collateral attack of foreign decree for failure to sign or swear to bill ineffectual.*

That a divorce bill is neither signed nor sworn to by petitioner, is not fatal to the decree, if the statutes of the State do not require such signature or oath. (*Post, pp. 66, 67.*)

3. SAME. *Collateral attack of foreign decree for res adjudicata ineffectual.*

The dismissal of a divorce bill by petitioner, before a hearing or adjudication on the merits, will not preclude a suit in another State based upon the same cause of action, or render decree in latter suit void. (*Post, pp. 67, 68.*)

4. SAME. *Collateral attack of foreign decree for fraud ineffectual.*

A petitioner for divorce need not disclose, to the Court, and is not guilty of fraud in failing to disclose, that several years previously he had begun another suit on the same cause of action in another State, which he voluntarily dismissed before a hearing on the merits. (*Post, pp. 67, 68.*)

*The effect of a divorce in another State as a bar to dower, is a subject of annotation to Vancleaf v. Burns (N. Y.), 15 L. R. A., 542.

Thoms *v.* King.

5. DOWER. *Barred by foreign decree for divorce upon publication.*

A decree of divorce based upon a reasonable, substituted service of process upon a nonresident of the State, is valid and effectual to bar dower. (*Post, pp. 68, 69.*)

6. SAME. *Same.*

Our statute providing that a divorce bars dower, applies to a divorce rendered by the courts of another State. (*Post, pp. 69–71.*)
Code construed: ¿ 3330 (M. & V.); ¿ 2473 (T. & S.)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

METCALF & WALKER and W. C. McNEILL for Thoms.

JNO. P. EDMONDSON, G. P. M. TURNER, W. W. GOODWIN, L. and E. LEHMAN, HENRY CRAFT, R. E. LOAGUE, and F. P. POSTON for King.

McALISTER, J.   The complainant, Josephine Thoms, a resident of Natchez, Miss., and claiming to be the widow of one H. A. Thoms, who died at Memphis while a resident of the State of Tennessee, filed this bill in the Chancery Court of Shelby County against certain heirs of said H. A. Thoms, for the purpose of recovering dower in his estate.   The vendees of other heirs, who purchased the interests of the latter in realty inherited from the said H. A. Thoms, were

also made parties defendant. The claim of complainant to dower in these lands was resisted by all the defendants, upon the ground that, on September 20, 1872, the said H. A. Thoms had procured a divorce from the said Josephine Thoms in a Court of competent jurisdiction in Alexander County, Illinois, and exhibit, with their answers, duly authenticated copies of said decree and proceedings. The complainant, on November 13, 1893, filed an amended and supplemental bill, in which she disclaimed any knowledge of the divorce proceedings in Illinois until apprised thereof by the answers filed to her original bill. Complainant expressly averred that she had no notice whatever of the Illinois suit, or that any such decree had been pronounced. Complainant then averred that in 1870 the said H. A. Thoms had filed a bill for a divorce against her in the State of Mississippi, where they both resided, in which he charged her with all the statutory grounds for a divorce, excepting that of desertion; that she interposed a demurrer, and thereafter filed a petition for alimony, in which the charges of the bill were specifically denied; that H. A. Thoms answered her petition, reiterating the allegations of his bill; that the cause came on for hearing on the petition, answer, and proof, whereupon it was adjudged by the Court that Thoms should pay $50 per month maintenance, and $400 for counsel fees. Complainant then alleges that thereafter, on August 15, 1870, Thoms, in vacation, before the clerk, at rules, dismissed his orig-

inal bill for a divorce, which had not been passed on in the proceedings for alimony. The order of dismissal recited that it was "without prejudice." Complainant alleges that thereafter she filed another petition, reciting the former order granting alimony and allowance of counsel fees; that Thoms had failed to pay the same, and charged that, in order to evade payment, he had procured the dismissal of his original bill "without prejudice," and complainant prayed that said order of dismissal without prejudice be vacated. The Court, upon the hearing, set aside said order. Thereafter an order was entered, upon motion of Thoms, dismissing the bill at his own costs, omitting the words without prejudice. Complainant charges that the said Thoms then left for parts unknown, abandoning her without reasonable or justifiable cause, and that if he went to Illinois it was not for the purpose of a *bona fide* residence, but for the purpose of instituting divorce proceedings against her without her knowledge or an opportunity to resist them. Complainant then attacks the validity of the Illinois decree, charging that Thoms had not been a *bona fide* resident of Illinois for one whole year preceding the filing of said bill, as required by the laws of that State.

Complainant further charges that the dismissal by the said Thoms of his bill for divorce in the State of Mississippi was *res adjudicata*, and that the decree rendered in Illinois thereafter was an absolute nullity. Complainant further charges that the suppres-

sion of the facts connected with the divorce proceedings in Mississippi was a fraud upon the Illinois Court, rendering its decree null and void.

It is further charged that said decree, having been obtained in Illinois without personal service upon complainant, it can, at most, only affect her dower in lands in the State of Illinois, where the decree was pronounced.

The defendants all answered the amended bill, relying upon the Illinois decree in bar of complainant's right of dower. Proof was taken, and upon the final hearing the Chancellor dismissed the bill. Complainant appealed, and has assigned errors.

The first assignment is that the Court erred in not holding the Illinois decree void, for the reason that H. A. Thoms was not a *bona fide* resident of that State, but took up his residence there for the fraudulent purpose of procuring a decree of divorce.

The proof shows that H. A. Thoms rented a house and embarked in business in Cairo, Ill., on the fourth of June, 1871, and his bill for divorce was filed more than one year thereafter, to wit, on July 22, 1872. Moreover, the proof shows that Thoms continued to reside in Illinois, purchasing real estate and transacting business there for four or five years. We think the weight of testimony is against this assignment, and shows that Thoms was a *bona fide* resident of Illinois at the time his petition was filed.

The second assignment is, that the Court erred

in not holding said decree void, for the reason there
was no allegation or proof that Thoms was a *bona
fide* resident of said State of Illinois at the time he
instituted said suit for divorce, or that he had been
such resident for one whole year prior thereto.

It suffices to say, in answer to this assignment,
that the averment is made upon the face* of the
petition filed by H. A. Thoms, in Alexander County,
for a divorce from the present complainant, "that
said Thoms is an actual resident of the county of
Alexander, and has been for one whole year past a
resident of the State of Illinois." The other branch
of this assignment is, that there was no proof that
H. A. Thoms was an actual resident of Illinois for
one year prior to the institution of his suit.

Complainant, for the purpose of showing that there
was no proof of the residence of the petitioner, filed
a transcript of the proceedings in the Chancery Court
of Alexander County, Ill. The only proofs we find
in this transcript are the affidavits of the petitioner
and his brother, one L. D. Thoms, who fully make
out the case, excepting the proof of residence. The
decree recites, viz.: "This day came the complainant,
by his solicitors, and also came the Master in Chan-
cery, who submitted his report and proofs taken
herein, and the Court, having duly read and exam-
ined the same, finds the allegations of complainant's
bill of complaint to be true," etc. It will be ob-
served there is no recitation upon the face of this
decree of the specific proofs taken by the Master

5—11 P

and considered by the Court. Nor does the certifi-
cate of the clerk show that the transcript authenti-
cated by him contains all the evidence or proofs
heard by the Court in said proceeding. The clerk
simply certifies the foregoing "to be a true, perfect,
and complete copy of the original papers and the
decree," etc.

In the absence of an affirmation showing that the
transcript contains all the evidence, it is to be pre-
sumed that the Illinois Court was fully warranted
by competent proof in pronouncing its decree. The
rule is, that when a Court has jurisdiction of the
subject-matter and of the person, its decrees cannot
be attacked in any collateral proceeding by a show-
ing that the evidence on which it was based was
illegal, improperly received, or insufficient to sustain
the judgment. In the first place, an objection of
that sort does not go to the jurisdiction, and, conse-
quently, the judgment cannot be void, although it
may be erroneous.

Again, the legality and sufficiency of the evidence
is a question for the Court to determine, and its de-
cision should be accepted as final and conclusive, un-
less in an Appellate Court. Black on Judgments,
Vol. I., § 268; *Martin* v. *Porter*, 4 Heis., 416;
4 Sneed, 380.

The third assignment is, the Court erred in not
holding said decree void, because said divorce bill
was neither signed nor sworn to by said Thoms.
We have carefully examined the statutes of Illinois

regulating the practice in divorce cases, and do not find any rule requiring the bill either to be signed or sworn to by the petitioner. This, it seems to us, disposes of the assignment.

The fourth assignment is, that the Court erred in not holding said decree void, for this, that the Illinois Court was fraudulently imposed upon, and jurisdiction fraudulently made to appear, and the decree fraudulently obtained, in this, that the said Thoms fraudulently suppressed the fact that he had instituted suit for the same purpose, and on the same grounds, in the State of Mississippi (excepting the charge of desertion), then the domicile of said Thoms and complainant, and that said bill had been dismissed in manner and form such as to have the effect of *res judicata,* and as an estoppel against the Illinois proceedings.

We are unable to perceive the force of the assignment that the proceedings in Mississippi constituted either an estoppel against the said Thoms or a *res judicata* of any suit in Illinois. It will be remembered, from the statement of the case, that the bill in Mississippi was voluntarily dismissed by Thoms before there had been a hearing on the merits, or an adjudication of any question involved in the litigation. The dismissal was before answer filed or issue joined. The effect of such a dismissal was to leave the parties in the same attitude as if no such bill had ever been filed. The other position assumed by counsel, that the failure of Thoms to disclose

the fact of the prior suit for divorce in Mississippi was a fraud upon the jurisdiction of the Court in Illinois, we think equally untenable. There was no duty devolving upon Thoms to make such disclosure, for the reason it would have been wholly unimportant for the Illinois Court to have known that, several years prior to the institution of that suit, Thoms had filed a bill for divorce in Mississippi, and, without a hearing upon the merits, had voluntarily dismissed it.

The sixth assignment is, that the Court erred in not holding that, inasmuch as said decree was not predicated upon personal service of process, but upon substituted process of publication as to Mrs. Thoms, a nonresident of Illinois, the decree would not bar her right of dower in realty situated in this State.

In considering this assignment of error, it is an immaterial consideration that the Illinois decree was based upon publication, and not upon personal service of process upon the defendant. Mr. Black, in his work on Judgments, Vol. II., § 932, says: "So that now the rule may be regarded as settled by the great preponderance of authority, that a decree of divorce pronounced by a competent Court in favor of a *bona fide* domiciled citizen of the State, and against a nonresident where service of process was made by a reasonable constructive notice, and in the absence of any fraud or collusion, is valid and binding both in that State and in all other States." See, also, § 931. The author, in stating his text,

proceeds upon the principle, which is sustained by the weight of authority, that a divorce proceeding is *in rem*, and if the petitioner has a *bona fide* domicile in the State where the divorce is granted, it is immaterial that the nonresident is only constructively notified of the proceedings. The author states that the citation should be the best that the circumstances permit, and such as will tend to prevent fraud; but it is by no means necessary that it should be the same as is required to justify a judgment *in personam*. The record in this case shows publication for four consecutive weeks, and that a copy of the notice was mailed to the complainant at Natchez, Miss., by the clerk of the Court.

The remaining question is, whether this decree is a bar to complainant's right of dower in realty owned by her former husband in this State. The provisions of our Code in respect of the effect of a domestic divorce upon the widow's dower, is, viz. (§ 3330, M. & V.): "If the bonds of matrimony be dissolved at the suit of the husband, the defendant shall not be entitled to dower in the complainant's [husband's] real estate, nor to any part of his personal estate, in case of his intestacy, nor to alimony." The question is raised whether this statute is applicable to foreign as well as domestic divorces. Says Mr. Bishop, in his work on Marriage and Divorce, Vol. II., § 1640: "It is a principle in our system of laws that the tenure, transfer, and

incidents of lands are under the exclusive control of the law of the State or country in which they are situated. Therefore, the question whether or not a woman who has procured or suffered a divorce shall have dower is determined exclusively by the laws of the State wherein the land lies, and it is immaterial whether such law is unwritten or statutory. So that, whether it gives or·withholds dower, the result from a foreign divorce is the same as from a domestic one." Says Mr. Story, in his Conflict of Laws, viz.: "In respect of real or immovable property, the same effects would, in general, be attributed to such divorce [a foreign divorce] as would ordinarily belong to a divorce of the same sort by the *lex loci rei sitæ.*" Sec. 230*b; Sheever* v. *Wilson,* 9 Wall., 108; *Cheeley* v. *Clayton,* 110 U. S., 705; Am. & Eng. Enc. L., Vol. V., pp. 921, 922. But, independent of the statute, the general rule, as stated by Mr. Justice Gray in *Barrett* v. *Bailing,* 111 U. S., 523, is, that a valid decree from the bonds of matrimony, for the fault of either party, cuts off the wife's right of dower and the husband's tenancy by the curtesy, unless expressly or impliedly preserved by statute." Says Mr. Bishop (M. & D., § 1633), viz.: "It would be a strange thing for the law to cast on the lands of a husband, after his decease, an obligation which did not rest on his person while living. Therefore, it has become established doctrine that, in the absence of a contrary direction from a statute, no woman can have dower unless she was

the wife of the man when he died." See, also, § 1632. "And the reason is, that dower is, in law, a maintenance from the husband to the wife, to be enjoyed by her when death has taken from him the power to render it through his personal exertions. By our unwritten law, when a man in any way— therefore, by divorce—ceases to be the husband of a woman, his duty actively to maintain her, or to contribute thereto, ends."

These principles are so fundamental and well settled as that they may be called axioms of the law on this subject.

We are of opinion the decree of divorce pronounced in Illinois was valid, and it follows, both from our statute as well as the principles of the common law, that the widow's right of dower is barred.

Affirmed.