HESTER A. TONCRAY *v.* SAMUEL J. TONCRAY.

(*Knoxville.* September Term, 1910.)

1. **DIVORCE. Decree as to divorce granted in a sister State is not reviewable upon appeal from only that part awarding alimony.**

A decree of the lower court adjudging a divorce, obtained by the defendant husband in a sister State, upon constructive service by publication alone, without service of process on the wife, notice to her, or appearance by her, to be valid only so far as it dissolved the marriage, and not to deprive the wife of the right to sue for alimony, is final so far as it is. not appealed from and the supreme court, upon the husband's appeal from the decree in so far as it awarded alimony, must regard the balance of the decree as valid, and cannot adjudicate the status or effect to be given such foreign decree of divorce. (*Post, pp.* 481, 482.)

2. **SAME. Decree for divorce can only be revised in the appellate court upon appeal.**

An appeal is the only mode of revising errors in a decree for divorce in the appellate court in this State. (*Post, pp.* 481, 482.)

3. **SAME. Our courts are not bound to recognize .divorces obtained in other States on publication, but may recognize all except alimony, when.**

A State is not bound, under the full faith and credit clause of the federal constitution, to recognize, as against its citizens, divorces obtained in other States on publication, at a place other than the matrimonial domicile; but each State may determine for itself what effect it will give to such decrees, and the court may enforce a decree so far as it affects the marriage *status*, and yet permit the wife domiciled in the State to sue for alimony. (*Post, pp.* 482-484, 491, 492.)

Cases cited and approved: Richardson v. Wilson, 8 Yerg., 67; Haddock v. Haddock, 201 U. S., 562.

Toncray v. Toncray.

4. SAME. Divorce without alimony, or alimony without divorce, may be decreed; no absolute connection between them.

Under our statute (Shannon's Code, sec. 4221), authorizing the court to award alimony, whether the divorce granted is absolute or only a temporary separation is decreed, a divorce may be granted without alimony, and alimony may be granted without a divorce; for there is, under this statute, no absolute connection between divorce and alimony. (*Post, p.* 484.)

Code cited and construed: Sec. 4221 (S.); sec. 3325 (M. & V.); sec. 2468 (T. & S.) and 1858).

Cases cited and approved: Nicely v. Nicely, 3 Head, 184; Swan v. Harrison, 2 Cold., 534; McBee v. McBee, 1 Heisk., 558-561.

5. SAME. Wife domiciled here, where the matrimonial domicile is, may sue for alimony, after husband's ex parte divorce obtained in a sister State.

Where this State is the State of matrimonial domicile of the parties, the wife still domiciled in this State can maintain an action for alimony, although the husband had obtained an absolute divorce from her in an ex parte suit upon constructive service by publication in a sister State. (*Post, pp.* 481-493.) and especially *p.* 491.)

Cases cited and approved: Richardson v. Wilson, 8 Yerg., 67; Plummer v. Hatton, 51 Minn., 181; Thurston v. Thurston, 58 Minn., 279; Rodgers v. Rodgers, 56 Kan., 483; Turner v. Turner, 44 Ala., 437; Cox v. Cox, 19 Ohio St., 502.

Case cited, distinguished, and overruled to the extent it conflicts with this case: Thoms v. King, 95 Tenn., 60.

6. CONSTITUTIONAL LAW. Decision of federal supreme court on a federal constitutional question is conclusive upon the State courts.

The supreme court of the United States is the ultimate expounder of the federal constitution, and its decision on a federal constitutional question is conclusive upon the State courts. (*Post, p.* 492.)

Toncray v. Toncray.

7. SAME. Conflict between the due process clause and the full faith and credit clause of the federal constitution as to ex parte divorces obtained in sister States.

It is well nigh impossible to formulate any rule respecting divorces obtained in *ex parte* suits upon constructive service by publication in sister States that will conform equally to the due process clause of the federal constitution, on the one hand, and to the full faith and credit clause thereof, on the other hand. Neither of these constitutional provisions is applicable to divorce proceedings of this character; for the State of the matrimonial domicile may, through its courts, give to a decree of divorce of that character rendered in a sister State such efficacy, within its own borders and as to its own citizens, as the decree may be entitled to in view of the State's public policy. (*Post, pp.* 491, 492.)

Case cited and approved: Haddock v. Haddock, 201 U. S. 562.

8. DIVORCE. Distinction between rights of wife in the State of the matrimonial domicile, and in other States.

There is a marked distinction between the rights of the wife in the State of the matrimonial domicile, and in other States, which is fully discussed and established in the cases cited below. (*Post, p.* 493.)

Cases cited and approved: Atherton v. Atherton, 181 U. S., 155; Haddock v. Haddock, 201 U. S., 562.

9. SAME. Statute depriving wife of alimony where the husband obtains the divorce is not applicable where husband obtains the divorce in a sister State upon publication, when.

The statute (Shannon's Code, sec. 4226), providing that where the bonds of matrimony are dissolved at the suit of the husband, the defendant shall not be entitled to dower in his real estate, nor to any part of his personal estate; in case of his intestacy, nor to alimony, cannot be invoked in behalf of a husband and against his wife, a citizen of this State, so as to defeat her subsequent suit here for alimony, where the husband deserts the wife in this State, the State of the matrimonial domicile, and obtains a decree of divorce upon constructive service by publication in a sister State. (*Post, p.* 494.)

Toncray v. Toncray.

Code cited and construed: Sec. 4226 (S.); sec. 3330 (M. & V.); sec. 2473 (T. & S. and 1858).

10. SAME. Alimony may be allowed out of property acquired by husband in this State after he obtained a divorce upon publication in a sister State.

Alimony is allowed the wife in recognition of the husband's common law liability to support her, which liability is a continuing one, and a personal charge against him, so that our courts when called on to enforce it, may subject to its satisfaction any property which he owns at the time of the suit; and property acquired by the husband in this State after obtaining a divorce upon publication in a sister State may be subjected to the wife's claim for alimony. (*Post, pp.* 494, 495.)

11. SAME. Amount awarded, with attorneys' fees, to absorb about half of the husband's estate, when.

A decree awarding alimony to a wife in her suit after her husband deserted her and obtained a divorce upon publication in a sister State, and there remarried and has a child of that marriage, should not absorb his entire estate; and the court will consider the rights of the second wife shown to be a worthy woman and child of the second marriage, and a decree of the chancery court absorbing the husband's entire estate will be reduced so that alimony and the attorneys' fees allowed will take about half of his estate. (*Post, pp.* 495, 496.)

---

FROM CARTER.

---

Appeal from the Chancery Court of Carter County. HAL H. HAYNES, Chancellor.

COLLINS & TIPTON, for complainant.

DAYTON HUNTER, and CAMPBELL & SWAN, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The bill in this cause was filed March 19, 1909, in which complainant sought a divorce from the defendant on the grounds of desertion and cruel and inhuman conduct. There was a prayer for alimony, attorney's fees, etc., and to secure the payment thereof the defendant's interest in certain valuable property in Carter county, Tenn., was attached, as the property of a nonresident.

The defendant answered, denying the allegations of the bill, and defending on the merits of the charges brought against him, and also, for further defense, he specially interposed a judgment of divorce by the circuit court of Wise county, Va., together with authenticated copies of the proceedings had in that court, all of which was pleaded as a bar to complainant's suit. The decree of the Virginia court was apparently founded on an alleged willful abandonment of the husband by the wife, upon the testimony of one Stout, who claimed to have knowledge of such fact so deposed. Toncray had resided in Virginia about twelve years at the time of this decree, and had unquestionably established a *bona fide* domicile there. The matrimonial domicile of the parties, however, was Tennessee. The Virginia decree was rendered November 13, 1905, and granted to Toncray an absolute divorce. It was based upon publication,

Toncray v. Toncray.

without service of process upon the wife, or any actual notice to her.

Upon issues thus made, proof was taken in this case, and it should here be said that we think the evidence offered fully sustains the allegations of complainant's bill as to the defendant's cruelty toward, and his desertion of this wife. He left her penniless with a family of six helpless children about 1893, went to Virginia, and contributed nothing to her support thereafter. Upon her appeal defendant's father helped care for the children. Complainant herself was destitute and frequently an object of county charity. So that, with the Virginia decree out of the way, this is a case in which the court would readily respond to the appeal of the wife, grant her divorce, and afford her such relief as was in its power.

The chancellor held that the Virginia case was valid in so far as it served to dissolve the bonds of matrimony existing between complainant and defendant, but that said decree, rendered without service of process on complainant, notice to her, or appearance by her, did not deprive complainant of her right to sue for alimony in this State, and he gave a decree in her favor for $3000 for alimony, making proper orders to secure its payment out of the estate of defendant previously impounded by the attachment. Defendant took a special appeal from that portion of the decree adjudging alimony against him, but neither party appealed from that portion of the decree holding the Virginia judgment valid,

in so far as it otherwise dissolved the marital relation, and an appeal is the only mode of revising errors in divorce proceedings in an appellate court of this State.

It results that we cannot here fully adjudicate the *status* to be given a foreign divorce obtained on publication alone. In this case that question has been determined by a court of competent jurisdiction. The chancellor's decree respecting this divorce and its *status*, in so far as it is not appealed from, is final. That decree held the Virginia divorce valid in Tennessee to a particular extent, and to that extent it must be regarded as valid in this court in this case.

The question then presented to us is whether a proceeding for alimony can be maintained by the wife in this State, this being the matrimonial domicile and all the while her domicile, against a husband who had previously obtained from her in a foreign State, upon publication, a divorce *a vinculo,* which divorce is recognized as valid and binding is so far as it severs the marriage tie. This is merely a suit for alimony in this court, for the chancellor has in effect settled the validity of the divorce for other purposes, and we are without power to review his action in this respect, if we so desired.

There is a conflict of authority in the several States upon the right of the wife to maintain an action of this sort, as there is upon many other questions arising out of divorce litigation. Uniformity of legislation and decision upon this subject is particularly desirable, but at present seems far of accomplishment. Meanwhile respecting foreign divorces, we think each State should

Toncray v. Toncray.

adopt such course as seems most likely to promote the the happiness and welfare of its citizens, consistent with a due regard for comity and good morals.

One thing that appears now settled, since the decision of the supreme court in *Haddock* v. *Haddock,* 201 U. S., 562, 26 Sup. Ct., 525, 50 L. Ed., 867, and that is that no State is bound, under the full faith and credit clause of the federal constitution, to recognize, as against its citizens, divorces obtained in other States on publication, at a place other than the matrimonial domicile. *Haddock* v. *Haddock* is too recent and too familiar to the profession to render any discussion of it profitable here.

Upon the principles of that case, each State is at liberty to determine for itself what effect to give to divorce decrees rendered against its citizens in another State, without personal service of process. So we may, in so far as the federal constitution is concerned, give to this Virginia judgment full recognition, partial recognition, or no recognition according as we consider the policy of our State demands.

This was, as has been seen, an *ex parte* proceeding in Virginia, with no representation of the wife. We think it well, as the chancellor has done in this case, to give certain efficacy to such decrees, to avoid rendering adulterous subsequent marriages of parties so divorced, and to avoid bastardizing children of such marriages. No such reasons of policy and morals restrain us from declining to give efficacy to this sort of foreign judgment in so far as it affects the question of alimony.

It was held in Tennessee at an early date that an *ex parte* divorce granted by the legislation of the State did not extinguish the marital relation so as to deprive the wife of her right to obtain alimony through the courts. *Richardson* v. *Wilson,* 8 Yerg., 67. No spirit of comity requires us to place an *ex parte* judgment of a foreign court upon a higher plane than such a judgment of our own legislature.

Construing our statute (section 4221 of Shannon's Code), this court has said: "Nor is there any necessary connection between divorce and alimony; a divorce may be granted without alimony, and alimony may be granted when no divorce is decreed." *McBee* v. *McBee,* 1 Heisk., 558-561. See, also, *Nicely* v. *Nicely,* 3 Head, 184; *Swan* v. *Harrison & Morris,* 2 Cold., 534.

It thus appears that there is, under our statute, no absolute connection between divorce and alimony. As our courts can decree the one without the other, so, upon principle, we could enforce a foreign decree as to one, and not as to the other. This Virginia decree is silent on the question of alimony, and we might say that it was not the intention of that court to pass on alimony, although we do not mean to be understood as saying we would have given effect to the decree, if it had undertaken so to adjudicate.

There is abundant authority to sustain the chancellor's decree from the courts of other States.

In the new Encyclopædia of Law and practice, it is stated:

"In general, it may be said that, if a divorce is *ex parte* a decree for alimony may be subsequently rendered on the wife's application to the courts of her husband's jurisdiction, or those of her own, if he can be found there and personally served." 3 Enc. L. & P., 75.

The supreme court of Minnesota, in a case where a husband domiciled with his wife in that State deserted her, and obtained a divorce from her in another State by constructive service, said, upon the wife's application for alimony:

"The action for divorce in Washington was in the nature of a proceeding *in rem*. It seized nothing but the marriage *status*. The only reason why the seizure of that was sufficiently complete to give jurisdiction to condemn and destroy it is because it cannot be severed as to one, without being severed as to both; one cannot remain married when the other becomes single. The court took jurisdiction of nothing else but the marriage *status*. 2 Bish. Mar. and Div., sections 169, 170, Nothing else was seized. No property was seized or came in question, and the proptery in this State could not be so seized.

"Neither the doctrine of *res judicata* nor estoppel to the parties concerned or interested in a proceeding *in rem* only so far as it has regard for the thing seized and condemned by the judgment.

"Thus A., claiming the right to the possession of a wagon which B. withholds from him, and finding all of it but the tongue in a State where B. does not reside, brings replevin, and on constructive service on B. ob-

tains judgment for the possession of that part of the wagon. In a subsequent suit between him and B. for the possession of the tongue, B. cannot plead that A. has split his cause of action, and A. cannot plead the adjudication in the first suit. On the contrary, all questions concerning the rights of the parties as to the tongue are *res nova*. See *Plummer* v. *Hatton*, 51 Minn., 181, 53 N. W., 460. Such is the case here; nothing is settled except that the marriage bonds are severed. 2 Bish. Mar. and Div., section 169.

". . . The claim for alimony in this case is a substantive part of the original controversy. It is not something which is created by, or merely grew out of, the divorce suit such as costs and attorney's fees incurred in prosecuting that suit. Alimony is in many States so far a right independent of divorce that, on general equity principles, it is allowed during marriage, and without decreeing either divorce or separation, when the parties are living apart, and there is sufficient ground for decreeing either divorce or separation. See 2 Bish. Mar. and Div., sections 354, 355, and cases cited. The question of alimony is not *res judicata* by reason of the judgment of divorce in the proceeding *in rem*. Neither does that judgment estop the plaintiff from showing that Thurston had committed acts which entitled her to a divorce and alimony, and that she had committed no acts which forfeited her right to alimony, or which entitled him to a divorce, if that is material. That judgment establishes nothing except that the marriage relation has been condemned and de-

stroyed by a judgment of divorce; all other questions are *res nova."* *Thurston* v. *Thurston,* 58 Minn., 279, 59 N. W., 1017.

In a Kansas case, the husband had deserted the wife in that State, where they were domiciled, and obtained a divorce from her on publication in West Virginia. Upon her application for alimony, the Kansas court said:

"As a divorce against a non-resident of this State may be obtained on service by publication, comity requires that we should give full faith and credit to the decrees of sister States of a like nature authorized by law. . . . The question of jurisdiction, however, is always open to inquiry. Under the laws of West Virginia introduced in evidence, as well as our own, the *status* of married persons comes within the range of the judicial power, although the parties may reside in different States. But it will not be claimed that the title to land or the custody of children in one State can be settled by the decree of the courts of another; and, while the West Virginia court did make a general order purporting to bar the rights of the wife in the real and personal property of the husband, yet this part of the decree could have no extraterritorial force so as to settle the title of any property outside that State. Mrs. Rodgers had acquired a homestead interest in the land upon which she resided with her children, and this could not be divested by the decree of any court of another State. We must therefore hold that the district court of Cloud county had jurisdiction over the question of alimony,

and the custody of the children, notwithstanding the West Virginia divorce, which must be held valid to the extent of dissolving the marriage relation. We think that the English common-law doctrine that alimony is an incident only to a suit for divorce, and cannot be the subject of an independent action, should be regarded as modified in this State, where we recognize the validity of the service by publication and the right of the wife to sue for alimony alone. The defendant is often entirely ignorant of the proceeding for divorce, as in this case, and may know nothing of the place of residence of the plaintiff. The wife may have no opportunity of setting up a claim for alimony nor for the custody of children; and, if she had knowledge of the proceeding, the court of another State would lack the power to deal effectually with these questions; and, as stated by the supreme court of Ohio in *Cox* v. *Cox*, 19 Ohio St., 502, 512 [2 Am. Rep., 415], the wife may still be regarded as holding that relation for the purpose of enforcing her claim to alimony and the custody of children." *Rodgers* v. *Rodgers*, 56 Kan., 483, 43 Pac., 779.

The supreme court of Alabama, where the husband had obtained a divorce in Indiana upon constructive service, after having left his wife in Alabama, their matrimonial domicile, upon the wife's application for divorce and alimony, observed that the Indiana decree might protect the husband from a prosecution for bigamy, should he marry again in Alabama, but said further:

Toncray v. Toncray.

"But without stopping to inquire whether it was obtaine'd by fraud, and therefore is vicious on that account or not, it certainly cannot affect the rights of the complainant, except her right in the husband as husband. If it is valid, it unmarries him and sets him free from his marital vows to her. He is no longer the complainant's husband. But it does not settle her right to alimony; it does not settle her right to dower in his lands, and her statutory right to distribution of his property in this State, in the event she should survive him, nor any other interest of a pecuniary character she may have against him. . . . It is the duty of the State to protect its own citizens within its borders. This is the natural compensation for allegiance. This high duty extends to all the pecuniary rights of the citizens, as well as to the rights of security of person. . . . No obligation of comity is paramount to this duty. Without a constant and effective exertion of it, citizenship becomes a farce. . . . The wife is as much the citizen of the State as the husband and is entitled to the protection of its laws to the same extent, so long as she remains within its jurisdiction. It would be a scandal to justice to imperil her and sacrifice her most important and cherished rights upon a mere technicality—a technicality that often contradicts the truth. When her protection requires it, it would be cruelly unjust for the State of her actual residence and domicile to repudiate its own right of jurisdiction to give her aid. I therefore think that the better opinion is that she has the right to file her bill here, and to all

Toncray v. Toncray.

the relief that the court could give her notwithstanding her husband might not be domiciled in this State at the commencement and during the whole pendency of her litigation with him." *Turner* v. *Turner,* 44 Ala., 437.

In an Ohio case the court, discussing the effect of a divorce obtained on constructive service in Indiana from a wife domiciled in Ohio, said:

"The question, therefore, is whether the *ex parte* decree can be made available, not only to effect a dissolution of the marriage, but to defeat the right of the petitioner to the alimony which the statute, upon the facts as they exist in regard to the husband's desertion, intended to provide for her. We think the decree ought not to have such effect. In arriving at this conclusion, we make no distinction between a decree rendered under the circumstances of this case in a foreign and one rendered in a domestic forum. In either case to give a decree thus obtained the effect claimed for it would be to allow it to work a fraud upon the pecuniary rights of the wife. Such a result is rendered necessary in our opinion by no principle of comity or public policy—the only ground upon which *ex parte* decrees of divorce are authorized and supported." *Cox* v. *Cox,* 19 Ohio St., 502, 2 Am. Rep., 415.

Other cases to the same effect as the foregoing from Alabama, Iowa, Kentucky, Maine, Michigan, Ohio, Minnesota, Nebraska, New Jersey, Washington, and Wisconsin, may be found cited in note 4, 3 Enc. L. and P., 75.

Toncray v. Toncray.

Applying the principles announced in the foregoing cases, we are of opinion and hold that where this is the State of the matrimonial domicile of the .parties, an action can be maintained by the wife, still domiciled here, for alimony, although the husband may have obtained a divorce from her upon publication in a foreign State. Such *ex parte* proceedings of a foreign State could be no more effective as to her rights in this respect than *ex parte* proceedings of our own legislature, referred to in *Richardson* v. *Wilson*, 8 Yerg., 67, heretofore mentioned.

We are aware that this conclusion is subject to some criticism. It is well-nigh impossible to formulate any rule respecting foreign divorces that will conform equally to the due process clause of the federal constitution, on the one hand, and to the full faith and credit clause, on the other. If we give full effect, or any effect, to such judgments, such action seems to conflict with the due process clause. If we give no effect, or only partial effect, to such judgments, such action seems to conflict with the full faith and credit clause.

The only apparent way to avoid these difficulties is to hold divorce proceedings to be *in rem*, and to ascribe to the court, granting a divorce on constructive service, jurisdiction of the *res*, or marital relation, and hold its decree effective as directed against a thing of which it had jurisdiction.

This theory was destroyed by the supreme court in *Haddock* v. *Haddock*, supra, where it was held that the *res* was divisible, and so much of the marriage rela-

tion as pertained to the *status* of the wife remained with her in the State of the matrimonial domicile, and never came within the jurisdiction of the foreign court.

The effect of *Haddock* v. *Haddock* is bound to be that neither of the constitutional provisions referred to is applicable to divorce proceedings of this character, for the court in that case disavowed the intimation of "a doubt as to the power of the State of New York to give to a decree of that character rendered in Connecticut, within the borders of the State of New York and as to its own citizens, such efficacy as it may be entitled to in view of the public policy of that State.

The supreme court of the United States is the ultimate expounder of the federal constitution, and, so long as *Haddock* v. *Haddock* stands, each of the States is entitled to give to such decrees as the one here under consideration just that degree of efficacy, within its borders as to its citizens, which its courts may determine to be the State's proper policy.

We think the policy of the chancellor's decree is the true one—the policy most consistent with justice, good morals and comity—and we adopt it as the course henceforth to be taken by the courts of this State.

We think the case of *Thoms* v. *King,* 95 Tenn., 60, 31 S. W., 983, is clearly distinguishable from this upon its facts. That was an application for dower out of the lands of a deceased husband who had established a domicile in Tennessee, which application was denied on the strength of a divorce obtained by the husband in Illinois upon constructive service. The wife there was

Toncray v. Toncray.

a resident of Mississippi, and the parties appear to have been married in Mississippi, or at least to have had their matrimonial domicile there. Tennessee was not the domicile of the wife, nor was Tennessee the matrimonial domicile of the parties. There is a marked distinction between the rights of the wife in the State of the matrimonial domicile, and in foreign States. This difference is fully discussed and estabished in *Haddock* v. *Haddock,* 201 U. S., 562, 26 Sup. Ct., 525, 50 L. Ed., 867, and *Atherton* v. *Atherton,* 181 U. S., 155, 21 Sup. Ct., 544, 45 L. Ed., 794, and the cases there cited and considered. The husband in the case of *Thoms* v. *King,* supra, established his domicile in Tennessee after the divorce was granted, acquired his property here after the divorce was granted, and, the wife having been a citizen of Mississippi all the while, the divorce in Illinois could not have affected any rights which she had in Tennessee at that time. She had no rights in Tennessee, growing out of her marriage relation, at the time of the Illinois decree, nor did she ever establish her own residence in Tennessee, so as to bring herself within the particular consideration of our courts.

*Thoms* v. *King,* supra, was decided in 1895, prior to the decision in *Haddock* v. *Haddock,* and prior to several other learned discussions upon the subject of foreign divorces. There are expressions in it that are contrary to the best modern judicial thought, and contrary to the views expressed herein. To that extent the case is overruled.

Section 4226, Shannon's Code: "If the bonds of matrimony be dissolved at the suit of the husband, the defendant shall not be entitled to dower in the complainant's real estate, nor to any part of his personal estate, in case of his intestacy, nor to alimony"—cannot be invoked in behalf of a husband and against the wife, a citizen of this State, where the husband deserts the wife in this the State of the matrimonial domicile, and obtains on publication in a foreign State a decree of divorce. It was never intended by the legislature that the wife, a citizen of this State, should be deprived of these rights in a distant forum without a hearing, and we are unwilling to give to the statute any such effect.

We think there is no force in the contention that the property now own by this defendant husband should not be subjected to the complainant's claims for alimony, because it came to the defendant after he was divorced in Virginia. There is some authority for this view, but we do not regard it sound.

It is said that "alimony is allowed the wife in recognition of the husbands' common-law liability to support her." 3 Enc. L. and P., 57. As, in effect, we have just held, the Virginia decree did not relieve defendant of this liability for the support of his wife. He assumed that liability upon marriage, and it was a continuing one. It rested upon him with as much force after the Virginia decree, and after he came into his inheritance, as before. It remained a personal charge against him, and our courts when called

Toncray v. Toncray.

on to enforce it, could subject to its satisfaction any property of which they found him possessed at the time of suit. This liability of the husband for the wife's support is as positive and fixed, under the law, as is the liability of the maker for the payment of a promissory note duly executed by him. It would not be claimed that the maker's property could be held free from the satisfaction of a judgment on his note, merely because he acquired the property after the note was made, but before suit thereon. With no more reason can such a claim be made respecting a judgment for alimony.

While approving the principle of the chancellor's decree, we think in its practical application he went too far. He gave complainant a decree for $3000. As we understand the record, that decree would absorb defendant's entire estate, which appears to be of about that value. Judgments for alimony do not generally go to such an extent. One-third of the estate, or one-half, is more often fixed upon by the courts as the proper proportion to be allowed as permanent alimony. Each case depends on its own circumstances, and the amount is within the discretion of the court, under our statutes. While the complainant herein has been greatly wronged, we think this judgment, under the circumstances of this case, should be reduced. The defendant has remarried in Virginia, and appears to have a child of that marriage. Nothing against the second wife appears in the record, but the testimony indicates that she is in every respect a worthy woman. Keeping in mind those ideas of justice, good morals, and comity, of which we

have previously spoken, it would be inequitable to beggar the defendant, now that he is charged with these new responsibilities. Whether he deserves any consideration, or not, his second wife and their child do. We think there should be a decree in favor of the complainant for $1200 alimony and $300 attorneys' fees, and all the costs.

With this modification, the decree of the chancellor is affirmed, and the cause remanded for execution thereof.