KENNETH B. KENNER *v.* MARY NICE KENNER.

(*Knoxville.* September Term, 1917.)

1. **DIVORCE. Jurisdiction. Residence of parties. Fraud.**

Although, where plaintiff went to a foreign jurisdiction solely for the purpose of instituting divorce proceedings on service by publication, the decree may be attacked for fraud by action in a foreign State, yet such attack cannot be sustained where the plaintiff removed with the *bona-fide* purpose of making a home in such State. (*Post, pp.* 218-220.)

Cases cited and approved: Gettys v. Gettys, 71 Tenn., 250; Chaney v. Bryan, 83 Tenn., 599; Thomas v. King, 95 Tenn., 60; Colburn v. Colburn, 70 Mich., 647; Hunter v. Hunter, 64 N. J. Eq., 277; Fosdick v. Fosdick, 15 R. I., 130; Thompson v. Thompson, 91 Ala., 591; Dunham v. Dunham, 162 Ill., 589; Gordon v. Munn, 87 Kan., 624; Succession of Benton, 106 La., 494; Felt v. Felt, 59 N. J. Eq., 606; Bidwell v. Bidwell, 139 N. C., 402; Cheever v. Wilson, 9 Wall., 108; Cheely v. Clayton, 110 U. S., 701; Haddock v. Haddock, 201 U. S., 562; Howard v. Strode, 242 Mo., 210; Buckley v. Buckley, 50 Wash., 213; Joyner v. Joyner, 131 Ga., 217; Toncray v. Toncray, 123 Tenn., 476.

Code cited and construed: Secs. 4203, 4207 (S.).

2. **DIVORCE. Jurisdiction. Service by publication.**

Jurisdiction of the defendant in divorce may be acquired in the foreign State by publication or other substituted service, although the defendant is a nonresident, and never has been in the State where suit was brought. (*Post, pp.* 218-220).

3. **DIVORCE. Operation and effect. Foreign decrees. Custody and support of children.**

The effect of a foreign decree, rendered on substituted service, is to free both spouses from the bonds of matrimony, where recognized; but recognition is optional, not being required by

Kenner v. Kenner.

the full faith and credit clause of the federal Constitution, but may be given on ground of comity. (*Post, pp.* 218-220.)

4. **DIVORCE. Operation and effect. Foreign divorces.**

Since the State by Shannon's Code, sections 4203, 4207, provides for rendering divorce decrees in favor of a resident against a non-resident, on service by publication, it should accord validity to decrees similarly rendered in other States where the proceedings are not open to attack for fraud. (*Post, pp.* 218-220.)

5. **DIVORCE. Custody of child. Interest of child.**

In determining the question of custody of infant children, the primary inquiry concerns their welfare rather than the technical legal right of the father to their possession and services. (*Post, pp.* 220-222.)

Cases cited and approved: State ex rel. Paine v. Paine, 23 Tenn., 523; Ward v. Roper, 26 Tenn., 111; Gardenhire v. Hinds, 38 Tenn., 403; State ex rel. v. Kilvington, 100 Tenn., 227; Baskette v. Streight, 106 Tenn., 549; Re Alderman, 157 N. C., 507; Seeley v. Seeley, 30 App. Cas. (D. C.), 191; Re Bort, 25 Kan., 308.

6. **DIVORCE. Custody of children. Modification of order.**

Although in an award of the custody of child to mother in divorce proceedings the father should be accorded, by court order, as matter of right, permission to see his child on proper occasions, yet this is a matter for the foreign court which granted the divorce, which would, no doubt, make a suitable order on the subject upon proper request. (*Post, pp.* 222, 223.)

7. **DIVORCE. Custody of child. Jurisdiction.**

The order of a State court directing that the custody of a child, of parents divorced by foreign court, shall alternate monthly between them, is beyond the court's power, where the child's domicile is with the mother in such foreign State. (*Post, pp.* 222, 223.)

Cases cited and approved: Wills v. Wills, 104 Tenn., 382; Hoffman v. Hoffman, 15 Ohio St., 427; Neil v. Neil, 38 Ohio St., 558; Miner v. Miner, 11 Ill., 43; Williams v. Williams, 13 Ind., 523;

Stone v. Stone, 158 Ind., 628; Morrill v. Morrill, 83 Conn., 479; Neville v. Reed, 134 Ala., 317; Green v. Campbell, 35 W. Va., 698; Wakefield v. Ives, 35 Iowa, 238; Kline v. Kline, 57 Iowa, 386; Rodgers v. Rodgers, 56 Kan., 483.

8. **DIVORCE. Custody of child. Judgment as to custody.**

As between the parents, the decree of divorce of a foreign court awarding the custody of the child is *res adjudicata*, subject to modification only by the court granting the decree, with the qualification, in case of removal of the child to another State, the courts of such State may, on change of circumstances, make new disposition of child as its best interests may require. (*Post, pp.* 223, 224.)

Cases cited and approved: Hammond v. Hammond, 90 Ga., 527; Wilson v. Elliott, 96 Tex., 472; Hardin v. Hardin, 168 Ind., 352; Bennett v. Bennett, Deady 299; People ex rel. v. Hickey, 86 Ill. App., 20; Everitt v. Everitt, 29 Ind. App., 508.

9. **DIVORCE. Custody of child. Domicile of child.**

In awarding custody of a child in divorce proceedings, the domicile of the infant is unimportant, and will not be controlled by the legal right of a nonresident father to custody when actually in the custody of the mother; the court being solely concerned with the child's best interests. (*Post, pp.* 225, 226.)

Cases cited and approved: Allen v. Thomason, 30 Tenn., 536; Farrow v. Farrow, 81 Tenn., 120.

10. **DIVORCE. Custody of child. Proper parties. Child.**

In a proceeding by a father to procure the custody of his child from the possession of his divorced wife, the infant was not a proper party. (*Post, p.* 226.)

11. **DIVORCE. Parties. Guardian ad litem.**

In a proceeding by a father to obtain the custody of his child from his divorced wife, a minor, the court properly refused to appoint a guardian *ad litem* for the wife, since her personal rights and those of the child may be properly protected without such guardian. (*Post, p.* 226.)

12. **DIVORCE.** Interlocutory order. Dismissal. Effect.

An interlocutory order pending divorce suit concerning temporary custody of the child is abolished by voluntary dismissal of the suit, and cannot be *res adjudicata*, since it was never a final decree. (*Post, pp.* 226, 227.)

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County.—HAL H. HAYNES, Chancellor.

L. D. SMITH, C. W. MARGRAVES and S. F. POWEL, for appellant.

H. H. SHELTON and HARR & BURROW, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Complainant and defendant were both born and reared in Hawkins county, this State. On the 23d of January, 1913, they went to Asheville, N. C., and were married, returning to the home of the husband's parent, where they lived until shortly before their separation. On December 12, 1913, a girl child was born to them. Shortly after the birth of this child, on the 20th of December, 1913, they separated. In March, 1914, Mrs. Kenner removed to Birmingham, Ala., to make her home with her brother, Dr. C. M. Nice, who had resided there for some years, and was

engaged in the practice of medicine at that place.  Her purpose in removing to Alabama was to make that State her future home.  She took the child with her, at the time she removed. to Alabama, and has ever since retained it.  The separation was caused by the cruel treatment which was inflicted by the husband upon the wife, it appearing that he committed violence on her person, and in other ways treated her with. great indignity.  At first she took up her residence at the home of her father in Rogersville, Hawkins county, but the attentions of her husband, against whom she had conceived an intense antipathy on account of his cruelties and indignities, so annoyed her that she resolved to remove to Alabama, with the double purpose of making her home there and so escaping her husband, and at the same time of obtaining a divorce from him, after the requisite residence of one year in Alabama, according to the laws of that State, After she had lived in Alabama one year she filed her bill of divorce in the chancery court of Jefferson county in that State.  Her husband remaining in Tennessee, he was proceeded against as a nonresident, and due publication was made for him, as required by the laws of Alabama, and in addition a copy of the bill was mailed to him, which he duly received.  After such service, an order *pro confesso* was entered against the defendant to that bill, he having failed to enter his defense, and likewise evidence was introduced and heard fully sustaining the bill.  He went to Birmingham and employed counsel to watch the proceedings

and make report to him. This was done. He forbade
the counsel to enter his appearance in the case. In
due time the decree for divorce absolute, in accord-
ance with the laws of Alabama, was entered reciting
as ground for divorce the cruelties and personal vio-
lence which had been inflicted upon the complainant by
her husband. This decree awarded the custody of
the child to the mother. This child was then but a
little over a year old. When she was taken to Ala-
bama by her mother she was very small even for a
child of her age, and was in very delicate health. She
needed the constant attention of a physician. Mrs.
Kenner's brother, with whom she lived, was a special-
ist in children's diseases, and he bestowed upon the
child all needed medical attention. The decree of the
Alabama court of Jefferson county did not give the
husband any right to see the child, but he went to Ala-
bama after the divorce had been granted, and was
permitted, on two occasions, by the mother, to see the
child. A short time after the entry of the Alabama
decree Mrs. Kenner returned to Rogersville, Tenn.,
to the home of her father, for the purpose of making
a visit, taking with her the child. The visit was made
principally on account of the health of the child, the
wife entertaining the belief, on advice, that the climate
of East Tennessee would be better for the child at
the time the visit was made. While Mrs. Kenner was
on this visit the complainant, her former husband,
filed his bill in the present case for the purpose of
setting aside the decree of the Alabama court on the

ground that it was obtained by fraud, and also for the purpose of securing custody of the child, or at least the opportunity of having custody for a part of the time. Chancellor Haynes, before whom the case was tried, after a very full consideration of it, and after finding the facts as we have found them, declined to give any relief to the complainant, and dismissed the bill. Thereupon an appeal was prayed and prosecuted to the court of civil appeals. That court, while expressing its view of the facts contrary to those we have stated, yet declined to interfere with the divorce, but was content to decree to the complainant the right to see the child at certain intervals. The court directed that a decree should be entered containing the following provisions:

"The father and mother shall be given the monthly custody, control, and society of their child. The husband shall at other times have the right to look after and secure the support, education, and welfare of the child. Each party will be required to enter into a bond of $5,000 not to permanently remove the child from the jurisdiction of the chancery court of Hawkins county. While the mother may take the child on a visit to Birmingham, or elsewhere, she will not be permitted to keep it out of the jurisdiction of the courts of this State for a longer period than a month, and the father will not be allowed to keep the child, until further orders, without its jurisdiction for a longer period than a month."

Both sides filed petitions for the writ of *certiorari* to remove the case from the court of civil appeals to this court.

Although it is true, a divorce decree procured in a foreign State without personal service of process on the defendant therein, the latter having been made a party only by publication or other substituted process, under the foreign law, and the plaintiff in such proceeding having gone to the foreign jurisdiction solely for the purpose of instituting such litigation, may be successfully attacked by a bill for fraud in any other State wherein rights are claimed under such decree (*Gettys* v. *Gettys,* 3 Lea [71 Tenn.], 260, 31 Am. Rep., 637; *Chaney* v. *Bryan,* 15 Lea [83 Tenn.], 599); yet such attack cannot be sustained when it appears, as in the present case, that the party obtaining the decree removed to the foreign State with the *bona-fide* purpose of making a home in that State, although entertaining at the same time a purpose to bring in the latter State an action for divorce as soon as a domicile therein could be acquired (*Thomas* v. *King,* 95 Tenn., 60, 31 S. W., 983; *Colburn* v. *Colburn,* 70 Mich., 647, 649, 38 N. W., 607; *Hunter* v. *Hunter,* 64 N. J. Eq., 277, 281, 53 Atl., 221; *Fosdick* v. *Fosdick,* 15 R. I., 130, 23 Atl., 140). Jurisdiction of the person of the defendant may be acquired in the foreign State by publication, or other substituted service, although the defendant is in fact a nonresident. *Thomas* v. *King,* supra; *Thompson* v. *Thompson,* 91 Ala., 591, 8 South., 419, 11 L. R. A., 443; *Dunham*

v. *Dunham,* 162 Ill., 589, 44 N. E., 841, 35 L. R. A., 70.
And this applies to either spouse, although the other
has never been in the State where the suit is
brought; and on such service a decree can be obtained
which should be respected in another jurisdiction.    9
R. C. L. Divorce, section 336; *Thompson* v. *Thompson,*
supra; *Dunham* v. *Dunham,* supra; *Gordon* v. *Munn,*
87 Kan., 624, 125 Pac., 1, Ann. Cas., 1914A, 783;
*Succession of Benton,* 106 La., 494, 31 South., 123,
59 L. R. A., 135, and note on page 146, second col.,
par. 3 et seq., and pages 148, 149, and pages 167 and
168; *Felt* v. *Felt,* 59 N. J. Eq., 606, 45 Atl., 105, 47 L. R.
A., 546, 83 Am. St. Rep., 612; *Bidwell* v. *Bidwell,* 139
N. C., 402, 52 S. E., 55, 2 L. R. A. (N. S.), 324, 329,
330, 111 Am. St. Rep., 797, 803.    And see *Cheever*
v. *Wilson,* 9 Wall., 108, 19 L. Ed., 604; *Cheely* v. *Clay-
ton,* 110 U. S., 701, 4 Sup. Ct., 328, 28 L. Ed., 298;
notes to 53 Am. St. Rep., 183, 94 Am. St. Rep., 554,
16 L. R. A., 499, and 5 Ann. Cas., 28.    The effect of
such a decree, in a State that chooses to recognize it,
is to free both spouses from the bonds of matrimony
previously binding them.    9 R. C. L., p. 508, section
330, note 14.    But it is optional with each State to
accord recognition, or to refuse it, since a refusal has
been held by the highest authority not to violate the
full faith and credit clause of the federal Constitution.
*Haddock* v. *Haddock,* 201 U. S., 562, 26 Sup. Ct.,
525, 50 L. Ed., 867, 5 Ann. Cas., 1. That is, the courts
of the several States may still recognize such foreign
decrees on the ground of comity, as suggested in the

case just cited. And see *Howard* v. *Strode,* 242 Mo., 210, 146 S. W., 792, Ann. Cas., 1913C, 1057; *Felt* v. *Felt,* supra; *Buckley* v. *Buckley,* 50 Wash., 213, 96 Pac., 1079, 126 Am. St. Rep., 900, 907; *Joyner* v. *Joyner,* 131 Ga., 217, 62 S. E., 182, 18 L. R. A. (N. S.), 647, 127 Am. St. Rep., 220, and note. The fact that the State in which recognition is sought provides by its own laws (as in Tennessee, Shannon's Code, sections 4203, 4207), for the rendering of such decrees in favor of a resident against a nonresident on publication, indicates the duty of according validity, on the ground of comity, to similar action in other States, where there is no material evidence of unfairness and the proceedings are not open to an attack for fraud, as previously explained. *Joyner* v. *Joyner,* supra. In our own State, in a rather recent case, this policy has been declared. *Toncray* v. *Toncray,* 123 Tenn., 476, 491, 492, 131 S. W., 977, 34 L. R. A. (N. S.), 1106, Ann. Cas., 1912C, 284.

Should such foreign decree be accorded binding force when it purports to determine the right of custody of the children of the marriage, when such children were in the foreign State, in the custody of the plaintiff therein, where the suit was brought, and where the decree was pronounced or should the defendant in that suit, aside from grounds of fraud, be permitted to reopen the question, on such child or children being brought into the residence State of such defendant, for a temporary purpose, as for a visit?

We are of the opinion that, under the circumstances stated in the question, the decree should be held binding on the parties thereto. Where the father loses custody of his infant children, and their disposition is brought before a competent court for determination of the question, the primary inquiry concerns the welfare of the children, not the technical legal right of the father to their possession, to use them at once, or at some future day, when grown older for the benefit of their services; and this is emphatically true when the person who invokes the aid of the court is the mother of the children, and a worthy woman. *State ex rel. Paine* v. *Paine,* 4 Humph. (23 Tenn.), 523. And see *Ward* v. *Roper,* 7 Humph. (26 Tenn.), 111; *Gardenhire* v. *Hinds,* 1 Head (38 Tenn.), 403; *State ex rel.* v. *Kilvington,* 100 Tenn., 227, 45 S. W., 433, 41 L. R. A., 284; *Baskette* v. *Streight,* 106 Tenn., 549, 62 S. W., 142. *State ex rel.* v. *Paine,* just cited, is our leading case on the subject, and has been consistently followed. The report of the case is accompanied by full briefs of very able counsel, and the opinion was prepared by one of our ablest judges. Its just, elevated and humane sentiments must find response in the bosom of every right-thinking man. The dominant thought is that children are not chattels, but intelligent and moral beings, and that as such their welfare and their happiness is a matter of first consideration. And see *Re Alderman,* 157 N. C., 507, 73 S. E., 126, 39 L. R. A. (N. S.), 988, and authorities cited; *Seeley* v. *Seeley,* 30 App. Cas.

(D. C.), 191, 12 Ann. Cas., 1058; *Re Bort,* 25 Kan.,
308, 37 Am. Rep., 255.

The case presented to the chancellor in Alabama,
was that of a mother who had been grossly abused by
her husband, and of a girl child less than two years
old, delicate, weak, sickly, in the custody of her
mother, and constantly needing and receiving the
loving care of that mother. The disposition of this
child was an integral part of the case, practically
inseparable from it, and so calling for the judgment
of the chancellor thereon. *Wills* v. *Wills,* 104 Tenn.,
382, 389-390; 58 S. W., 301. Who can say that a
different judgment should have been rendered even if
the father of the child had been present, and had
offered the most strenuous opposition? But it is
suggested the father should be permitted to see the
child on proper occasions; that this should be accord-
ed him as a matter of right, by the court, not as a
voluntary concession by the mother. This is a matter
for the Alabama court. That court, on being applied
to, would no doubt even now make a suitable order
on the subject; such power being held essentially in
reserve by all courts in such cases. *Hoffman* v.
*Hoffman,* 15 Ohio St., 427, 434, 435; *Neil* v. *Neil,* 38
Ohio St., 558; *Miner* v. *Miner,* 11 Ill., 43, 49, 50;
*Williams* v. *Williams,* 13 Ind., 523, 528; *Stone* v.
*Stone,* 158 Ind., 628, 64 N. E., 86; *Morrill* v. *Morrill,*
83 Conn., 479, 484, 77 Atl., 1. And see *Neville* v. *Reed,*
134 Ala., 317, 32 South., 659, 92 Am. St. Rep., 35;
*Green* v. *Campbell,* 35 W. Va., 698, 14 S. E., 212, 29 Am.

Kenner v. Kenner.

St. Rep., 843.   But such an order as the learned court of civil appeals directed to be entered in the present case would virtually deny the child's mother the right to retain her home in Alabama, since it would compel her to return to Tennessee every month, so that the child's father might have the opportunity of seeing the child that often.

Other jurisdictions are in accord.   The determining fact seems to be that the child was in the foreign State in the custody of the parent who had there acquired a domicile, and was there suing for divorce, at the time the foreign court passed its decree. *Wakefield* v. *Ives,* 35 Iowa, 238; *Kline* v. *Kline,* 57 Iowa, 386, 10 N. W., 825, 42 Am. Rep., 47; *Rodgers* v. *Rodgers,* 56 Kan., 483, 43 Pac., 779; *Seeley* v. *Seeley,* supra.   Where the child is within the local jurisdiction the court has the power to award its custody to the one parent or the other; when it is not within that jurisdiction, no such power exists. Cases supra.

We are of the opinion that as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children is *res adjudicata,* subject, as between those parties, to modification only by the court that granted the decree. *Hammond* v. *Hammond,* 90 Ga., 527, 16 S. E., 265; *Wilson* v. *Elliott,* 96 Tex., 472, 73 S. W., 946, 75 S. W., 368, 97 Am. St. Rep., 928; *Hardin* v. *Hardin,* 168 Ind., 352, 81 N. E., 60; *Bennett* v. *Bennett,* Deady, 299, Fed. Cas:, No. 1318.   However, we think this

doctrine should be understood with the qualification that, in case of the removal of the child to another State, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the State to which the removal has been effected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child. *People ex rel.* v. *Hickey,* 86 Ill. App., 20; *Re Bort,* supra; *Re Alderman,* supra. And see *Wilson* v. *Elliott,* supra; *Neville* v. *Reed,* supra; *Green* v. *Campbell,* supra; *Everitt* v. *Everitt,* 29 Ind. App., 508, 64 N. E., 892, 94 Am. St. Rep., 276.

There is nothing in the present case to show that it would be to the interest of the child to change its custody. Such good reason is not found in the fact that the father of the complainant is richer than the father of the defendant, and on that ground the expectations of the former greater. Nor is it a good reason that the father is earning money, and the mother is not; it appearing that the latter through the very competent aid of her father and brother is furnishing, and may be expected to furnish, indefinitely, any needed care and comfort for the child. Moreover, it would require a very strong and urgent case to justify any court in interfering during the brief visit of the mother and child to a point outside of their home State.

) In opposition to the conclusion we have reached it is urged that the domicile of an infant is that of its father; that the child is incapable of assenting to a change; therefore that there can be no legal change of domicile where the father has not consented; *ergo* when the child, after any attempted change, happens to be found within the jurisdiction where the father resides, the latter can appeal to a court to restore his possession, and that this restoration the court is bound to grant as a matter of right, regardless of the fact that another court having jurisdiction of the mother who had the actual custody of the child at the place of the forum had, in a divorce suit between the father and mother, to which the latter was duly made a party under forms, and by process, recognized by law as binding on him, by its decree awarded custody of the child to the mother. It is a *non sequitur*. The domicile of an infant is frequently of importance where its property rights are involved (*Allen* v. *Thomason,* 11 Humph. [30 Tenn.], 536, 54 Am. Dec., 55; *Farrow* v. *Farrow,* 13 Lea [81 Tenn.], 120, 124), but the question is unimportant in divorce cases, as is clearly inferable from the authorities cited, to the effect that when the father has lost custody, the court, finding the custody actually with the mother, will not, in a divorce suit between the parents (although the father be a nonresident), be controlled by the father's legal right to the custody, but solely by what is deemed to be to the best inter-

ests of the child, and will dispose of its future accordingly.

The child was made a party to the present litigation by an amended bill. It is said Chancellor Haynes committed error in refusing to appoint a guardian *ad litem* for her on complainant's application. This was no error, since the child was not a proper party, and was at most only a nominal party; the mother, its custodian, being before the court.

It is said the defendant herself, being a minor when this action was tried, should have had a guardian appointed to defend for her, pursuant to complainant's application for such appointment. This is likewise a mistaken view. She needed no guardian to effect the contract of marriage; nor yet to escape its bond. Still less did she need one to defend the rights she acquired under the decree that freed her. The court itself can protect personal rights of the nature here involved without the aid of a guardian. At all events, since these rights will be fully protected by the decree which we shall order, no harm is done, and the error, if any, is wholly without effect.

It is insisted that the custody of the child was disposed of between the present parties in a former divorce suit between them in Hawkins county, this State. That action was brought by the wife in the chancery court of Hawkins county, but was dismissed by her on her own motion before final decree by leave of the court. While the suit was pending an interlocutory order was made concerning the temporary

custody of the child, dividing it between the parents. That tentative litigation can have no effect upon the present controversy. When the bill was dismissed the interlocutory order went out with it. This is true as a matter of principle, since there can be no *res adjudicata* without a final decree. But the exact point has been already ruled, as we here decide it, in *Thomas* v. *King,* supra.

The result is, the decree of the court of civil appeals must be reversed, and that of the chancellor dismissing the bill must be affirmed, with costs.