A. C. ALEXANDER et ux. v. PAUL L. ALEXANDER et ux.—286 S. W. (2d) 104.

Middle Section. July 1, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

522

Geo. B. Haile, of Cookeville, for complainants.

E. A. Langford, Wesley P. Flatt, Jr., and Wesley P. Flatt, Sr., all of Cookeville, for defendants.

I

SHRIVER, J. The original bill in this cause was filed October 6, 1953 and prayed (1) for process (2) for a temporary injunction to prohibit and restrain the defendants, or either of them or their agents, from seeking to obtain possession of the infant defendant, Linda Paulette Alexander, until a final determination of the cause, and "upon the final hearing of this cause said injunction be made perpetual, and the care and custody of said minor be awarded to your complainants," and (3) for general relief.

A. C. Alexander and wife are the father and mother of defendant Paul L. Alexander. Paul L. is the father of the infant, Linda Paulette.

A temporary injunction pursuant to the prayer of the bill was granted by the Chancellor but later was dissolved on motion of the defendant Norma Faye Alexander, wife of Paul L., and mother of the infant whose custody is involved herein.

Thereafter the defendant, Norma Faye Alexander, filed a plea in abatement attacking the jurisdiction of the Chancery Court at Cookeville. After hearing proof, the Chancellor sustained said plea in abatement and dismissed the bill.

From this decree the complainants have appealed and have assigned errors.

*Assignment No. 1,* is "That the Court erred in sustaining the defendant Norma Faye Alexander's motion to dissolve the temporary injunction."

*Assignment No. 2,* is "That the Court erred in failing and refusing to sustain complainants motion to strike defendant Norma Faye Alexander's plea in abatement."

## II

The essential facts in chronological order are as follows:

1. As stated in the original bill the defendant Paul L. Alexander and Norma Faye Alexander were married March 6, 1949. About October 1950 they went to the State of Michigan to live. Linda Paulette was born to this union and was about four years old when the bill was filed herein.

Discord arose between these defendants with the result that they separated.

While the child's father, Paul L. Alexander, is nominally a defendant in this case, he is, in fact, the moving spirit on behalf of complainants.

2. In November 1952 Paul L. Alexander filed a bill in the Circuit Court of Macomb County, Michigan, seeking a divorce from Norma Faye Alexander.

He charged her with extreme cruelty and misconduct such as staying out until four or five o'clock in the morning and coming home under the influence of intoxicants.

While he named and referred in the bill to their child, Linda Paulette, aged three, he did not seek to remove her from the custody and control of his wife.

This action was still pending in Michigan when the bill in the case at bar was filed.

3. April 1953 Paul L. came back to Putnam County, Tennessee, and took up his residence with his father and mother, the complainants, leaving his wife and child in Michigan.

4. July 1953 Norma Faye came to Putnam County, Tennessee, on a visit of a few days with her relatives, bringing the infant Linda Paulette with her.

It is to be observed that the parties while living in Michigan had bought a home and had taken up what ap-

peared to be a permanent residence there which residence the defendant Norma Faye Alexander continued throughout the period involved in this record.

5. About July 8th or 9th, 1953, Paul L. discovered the child in an automobile on the streets of Cookeville, Tennessee, where she had been left momentarily by her mother in company with the mother's sister, and he forcibly took her from the car and carried her to his place of residence in that county and allegedly turned her over to complainants, his father and mother.

6. Norma Faye returned to her home in Michigan and in the latter part of July 1953 filed an answer and cross-bill in the pending case in the Michigan Court.

7. August 10, 1953, Norma Faye was awarded a decree by the Michigan Court for $15 per week to be paid by Paul L. for the infant's support and was awarded custody of the child.

8. September 14, 1953, Paul L. signed and swore to an answer to the cross-bill of Norma Faye and forwarded it to Michigan for filing. The record shows that it was filed.

9. September 22, 1953, the attorney for cross-defendant Paul L. served notice on attorney for cross-plaintiff, Norma Faye, of a motion to vacate the order of default entered on September 16, 1953.

10. October 6, 1953, the original bill herein was filed in the Chancery Court at Cookeville by complainants seeking custody of the child and an injunction against defendants to prevent a disturbance of their possession of the infant.

Among other things they alleged that no proceedings were pending in any Court relative to the care and custody of the child.

11. October 12, 1953, a decree was entered in the Michigan Court reciting (1) plaintiff and cross-defendant's de-

fault in answering the cross-bill, (2) that, thereafter he filed an answer to the cross-bill, (3) that from the proof the cross-bill was sustained, (4) an absolute divorce was granted cross-plaintiff, (5) the custody of the child Linda Paulette was given the mother, Norma Faye, until she attains the age of seventeen years or until further orders of the Court, (6) alimony, (7) property settlement, (8) attorneys fees, (9) a permanent injunction against disturbance of the custody of the child, (10) interim clause, (11) service fees, (12) provision for the divorce becoming final.

12. November 16, 1953, on motion before the Chancellor at Cookeville, the injunction issued upon the filing of the O.B. herein, and which restrained Norma Faye from interfering with complainants' possession of the infant, was dissolved.

13. Almost immediately after the injunction was dissolved Norma Faye went to complainants' home and took the child away with her and returned to her home in Michigan. She retained custody and possession of said infant and had it when the plea in abatement herein was filed and when the case was heard and finally determined.

14. August 6, 1954, the plea in abatement was filed by Norma Faye reciting the facts about the Michigan proceedings, including the finality of the decree there.

15. Motion to strike the plea was made September 16, 1954, and was overruled October 4, 1954.

16. December 2, 1954, replication to the plea was filed joining issue.

17. December 15, 1954, after hearing proof, the plea was sustained by the Chancellor and the bill, as amended, was dismissed.

18. Appeal prayed from the judgment of the Court and seasonably perfected.

## III

1. To the actions of the Court in dissolving the injunction restraining the defendants from interfering with the custody of the child in question the complainants have assigned error.

This Court is of opinion that there is no merit in this assignment No. 1 and it is, accordingly, overruled.

■ ■ There is nothing in this record to support the contention that there was abuse of discretion on the part of the Chancellor in his action in dissolving said injunction. In the absence of a showing of abuse this Court will not interfere with the exercise of the Chancellor's discretion in such matters.

See Section 833 Gibson's Suits in Chancery also Section 857 and notes wherein it is said "After all, the true rule in deciding motions to dissolve seems to be to do what a sound discretion requires."

2. Assignment No. 2 is not meritorious.

As to grounds I, II, III and IV of the motion to strike, viz., that permission to file was not obtained in advance and that it was not filed soon enough:

■ It was within the discretion of the Chancellor to grant permission to file the plea even though it may not have been offered as promptly as it should, and he had the discretion to consider the pleading even though permission to file it had not been obtained in advance. The latitude of the Courts' discretion in this regard is too well established to require citation of authorities.

The motion to strike complained (V and VI) that the plea is not pertinent to the issues raised by the bill.

■ There is no merit in this contention as the question of jurisdiction of the subject matter of the litigation is put squarely in issue by the bill and the plea.

(There was no paragraph No. VII.)

Finally, the motion to strike says (VIII) that the matters raised by the plea are wholly extraneous and, even if true would have no relation to the things set forth in the bill.

Since the plea alleges that the parties and the child in question were submitted to the jurisdiction of the Michigan Court long before this action was commenced and was still pending there, it became pertinent for the Chancellor to consider the facts as alleged to determine the question of jurisdiction.

Hence this assignment is overruled.

## IV

1. While assignment No. 2 complains that the Court erred in failing and refusing to sustain complainants motion to strike the defendant Norma Faye Alexander's plea in abatement, it appears that a hearing was had by the Court on the plea in abatement pursuant to a written agreement of the parties.

In the transcript (page 40) it is recited: "This cause was tried on December 15, 1954, by written agreement of the parties that the cause be tried before the Chancellor on oral and documentary evidence, the Chancellor sitting as the Chancellor, the jury being waived, the cause being tried alone on the question of whether or not the plea in abatement of the defendant Norma Faye Alexander should be sustained, whereupon the following evidence was introduced before the Chancellor."

At this hearing Norma Faye Alexander took the witness stand and testified.

Following her testimony Mrs. Daisy Alexander, one of the complainants, took the witness stand, followed by Ruby Maddux Shores and the rebuttal testimony of Nor-

ma Faye Alexander, this being all the evidence before the Court.

Therefore it appears that the cause went off on the issues made up by the plea in abatement of Norma Faye Alexander and the replication thereto.

2. From a recitation of the facts hereinabove set forth it appears that the Circuit Court for the County of Macomb Michigan acquired jurisdiction of the subject matter of this litigation upon a bill filed by the defendant Paul L. Alexander where the issues were made up and upon which proceedings the custody and control of the minor child in question in this litigation was awarded to the mother of the child, Norma Faye Alexander. Therefore, having acquired jurisdiction of the cause and of the parties the Michigan Court retained same to the exclusion of the Chancery Court for Putnam County, Tennessee, unless the Michigan Court lost jurisdiction of the child when she was carried by her mother on a temporary visit to relatives in Putnam County, Tennessee, where she was seized and forcibly taken by the father and turned over to complainants.

A general statement of the applicable rule is found in 9 R. C. L. Pages 477-8 as follows:

"A majority of the cases seem to hold that in the absence of fraud, or want of jurisdiction affecting its validity, a judgment divorcing a husband and wife and awarding the custody of children of the marriage should be given full force and effect in other states, as to the right to the custody of the children at the time and under the circumstances of its rendition; although the decree has no controlling effect in another state as to facts and conditions arising subsequently to its rendition, and the courts of the latter state may, in proper proceedings, award the custody

otherwise than in accordance with the original decree, upon proof of matters subsequent to the decree, which justify such inconsistent award in the interest of the welfare of the children.''

In Kenner v. Kenner, 139 Tenn. 211, at pages 220-221, 201 S. W. 779 at page 782, L. R. A. 1918E, 587, it is stated:

"Should such foreign decree be accorded binding force when it purports to determine the right of custody of the children of the marriage, when such children were in the foreign state, in the custody of the plaintiff theren, where the suit was brought, and where the decree was pronounced or should the defendant in that suit, aside from grounds of fraud, be permitted to reopen the question, on such child or children being brought into the residence state of such defendant, for a temporary purpose, as for a visit?

"We are of the opinion that, under the circumstances stated in the question, the decree should be held binding on the parties thereto." Citing cases.

At page 223 of 139 Tenn. at page 782 of 201 S. W. the opinion continues:

"We are of the opinion that as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children is res adjudicata, subject, as between those parties, to modification only by the court that granted the decree. Citing cases.

"However, we think this doctrine should be understood with the qualification that, in case of the removal of the child to another state, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the state to which the removal has been

effected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child.'' Citing cases.

In Johnson v. Johnson, 185 Tenn. 400, 206 S. W. (2d) 400 it was held that under Code Sec. 8454 a decree granting a divorce and awarding custody of a child remains within the control of that Court. It was further stated 185 Tenn. at page 406, 206 S. W. (2d) at page 403:

"This Court has held that even though the decree awarding the custody of the child is the decree of a foreign Court, nevertheless, that decree 'as between the parents, * * * is res adjudicata, subject, as between those parties, to modification only by the court that granted the decree' so long as such child remains within the jurisdiction of that Court. Kenner v. Kenner, 139 Tenn. 211, 223, 201 S. W. 779, 782, L. R. A. 1918E, 587.''

In Wills v. Wills, 104 Tenn. 382 at page 389, 58 S. W. 301 at page 303, the Supreme Court said:

"We think that the custody of the children is so interwoven with *and* dependent upon the right of divorce that the latter could not be revised and corrected without at the same time inquiring into and revising and correcting the grounds of divorce themselves.''

■ While there is some conflict in the authorities, the better position, supported by a long line of cases in numerous jurisdictions, is, that a decree of divorce awarding custody of children of the parties, rendered by a court having jurisdiction of the parties and the subject matter, should be given full effect. This is, of course, subject to modification by reason of changes in circumstances oc-

curring after the decree. (12 Am. & Eng. Ann. Cas. 1059—notes.)

■ Paul L. Alexander submitted himself and his child to the jurisdiction of the Michigan Court when both were residents there and subject to that jurisdiction.

His forcible and wrongful seizure of the child while she was on a visit to Putnam County, Tennessee was not sufficient to oust the Michigan Court of jurisdiction, especially since the child's legal domicile had not been changed to Tennessee by the visit of a few days in the custody of the mother.

If the original bill herein had fairly set forth the facts about the Michigan proceedings and had alleged such change in circumstances surrounding the child as would have called for action on the part of the local Court to save the child from exposure to danger of imminent peril or great harm, it could hardly be denied that the Chancery Court possessed the power to act. This was not the case. The bill reiterated charges against the child's mother that were made in the Michigan bill and considered by that Court.

The plea in abatement set forth the Michigan proceedings and the circumstances under which the child's custody was sought to be disposed of in the Chancery Court for Putnam County, Tennessee.

The Chancellor considered that the plea was sufficient on its face and, therefore, declined to strike it on motion of complainants.

As above indicated, we concur in this action of the Chancellor.

Furthermore, since the child was before the Michigan Court, and its custody was so interwoven with the divorce action as to be an integral part thereof, the father could not escape the force and effect of that Court's decrees

affecting the custody by forcibly seizing and holding the child in Tennessee.

Its temporary presence here, in the absence of a showing of an emergency respecting its safety and well being, was not sufficient to oust the Michigan Court of jurisdiction.

Finally, it should be remembered that the mother regained possession of the child in November 1953 and took her back to her place of residence in Michigan, and she was in Michigan in the possession and control of the mother when the plea in abatement was filed and when it was finally disposed of.

## V

It results that all assignments of error are overruled.

The appellants will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.