## MRS. R. KING BURTON, Appellee, v. R. KING BURTON, Appellant.—376 S. W. (2d) 504.

Western Section. September 3, 1963.

Rehearing Denied October 2, 1963.

Certiorari Denied by Supreme Court March 5, 1964.

John R. Gilliland, Memphis, Canale, Glanker, Montedonico, Boone & Loch, Memphis, of counsel, for appellant.

Neely, Green & Fargarson, Memphis, for appellee.

BEJACH, J. In this cause R. King Burton, a nonresident of Tennessee and a resident of San Angelo, Tom Green County, Texas, who was defendant in the lower court, appeals from a decree of the Chancery Court of Shelby County, Tennessee, entered in the Court of Hon. Robert A. Hoffmann, Chancellor, which sustained complainant's suit as one for separate maintenance and holds defendant liable for alimony payments to complainant. In this opinion the parties will be referred to as complainant and defendant. A discretionary appeal was granted to defendant. Presumably this was in advance of a reference for the purpose of ascertaining the amount of separate support payments or alimony to be made by defendant. No reference is ordered in the decree, but it does contain a provision, "That complainant, Mrs. R. King Burton, is entitled to receive alimony, support or maintenance from the defendant R. King Burton, in an amount to be determined by the Court." This cause was initiated as an attachment suit against property of the defendant in Tennessee, but, when the defendant entered a general appearance in the cause, a consent order was entered dissolving the attachment.

The original bill in this cause was filed December 21, 1959. It alleges, and the proof establishes, that complainant and defendant were married in San Angelo, Tom Green County, Texas, on April 20, 1953, and lived together in that place until June 11, 1959. The bill alleges that defendant turned complainant out of doors, after abusive conduct toward her, and that after her withdrawal from defendant, she returned to Memphis, Shelby

County, Tennessee, where she had resided prior to her marriage with defendant. The bill alleges that, since their separation, defendant has refused and neglected to provide for complainant. The bill specifically alleges that complainant is not seeking a divorce, and that she did not, in fact, have the required length of residence in Tennessee to entitled her to sue for a divorce. As far as jurisdiction of the case is concerned, this is entirely proper. Cureton v. Cureton, 117 Tenn. 103, 96 S. W. 608. As originally filed, the bill was a suit for damages in the sum of $10,000; but it was later amended so as to sue for alimony or separate support and maintenance. The amended bill charges that the defendant has been guilty of cruel and inhuman treatment. Defendant in his answer to the amended bill admits the marriage of complainant and defendant in Tom Green County, Texas, and alleges that complainant had resided continuously with him until complainant voluntarily left and returned to Tennessee. It denies that defendant committed acts of cruelty to defendant, but admits that he had not supported her since she voluntarily left him. The answer alleges that defendant told him she was not returning to him, after which he filed suit for divorce from complainant. Certified copies of his petition for divorce in Tom Green County, Texas, and of the decree granting to him a divorce are filed as exhibits to his answer, certified under the Act of Congress. Said divorce decree is pleaded as a defense to complainant's suit. Defendant also pleads as a defense to complainant's suit an ante nuptial contract entered into between the complainant and defendant prior to their marriage, under date of June 21, 1951. The divorce granted to defendant was based on constructive service, a copy of the bill in that case having been served

on complainant in Shelby County, Tennessee, by the Sheriff of Shelby County, Tennessee, as is required by the laws of the State of Texas in such cases.

The ante nuptial contract, which is made part of defendant's answer, is in the words and figures as follows:

"STATE OF TEXAS ⎫ KNOW ALL MEN BY
COUNTY OF TOM GREEN ⎭ THESE PRESENTS:

That this contract this day entered into by and between R. King Burton, as first party, and Minnie Buckingham Carter, as second party, witnesseth:

The parties hereto contemplate marriage, and desire to enter into the following contract under the terms of Article 4610 of the Revised Statutes of Texas [Vernon's Ann. Civ. St. art. 4610], with reference to handling of their properties.

Each party hereto owns both real and personal property, and it is understood and agreed between both parties that all property owned by each party at the time of marriage, whether real, personal or mixed, shall remain the property of the party owning the same, and the other party disclaims any interest therein.

It is understood and agreed that the second party owns property in the State of Tennessee, and in the event she receives any rents from said property, or any income therefrom, the first party does hereby give the same to her, so that such income will continue to be the separate property of the second party.

It is further understood and agreed that the first party will support the second party and will support the second party out of income from his separate property; how-

ever, if there is sufficient income above the amount necessary to support parties, the second party does hereby give the balance of the income to the first party, so as to make the same the separate property of the first party.

It is further understood and agreed that in the event of a dissolution of the marriage, that neither party shall claim any interest in the property of the other party.

This contract is made in order to adjust all property rights between the parties prior to marriage so that there will be no conflicting interest in the two estates, and the two estates to remain separate and distinct.

Witness our hands this 21st day of June A.D. 1951.

(Signed) R. King Burton, First Party
(Signed) Minnie Buckingham Carter, Second Party''

Said ante nuptial contract is duly acknowledged by both of the parties thereto before a Notary Public of Tom Green County, Texas.

At the trial of this cause on April 3, 1962, the complainant's proof consisted of complainant's deposition taken before the trial, the testimony of three witnesses examined in open court, and two depositions taken on interrogatories. The defendant introduced no proof other than the ante nuptial agreement and the certified copy of the divorce proceedings had in Tom Green County, Texas. Unless the Texas divorce and/or the ante nuptial contract, either or both, afford a successful defense for defendant, complainant is entitled to an affirmance of the lower court's decree.

After taking the cause under advisement, the Chancellor, on October 19, 1962, filed an opinion designated by

him as "Memorandum Brief and Findings of Fact", in which he held that complainant was entitled to receive a reasonable amount from the defendant for alimony, support, or maintenance, notwithstanding the fact that a valid decree for divorce had been rendered in the defendant's favor in Texas, and notwithstanding the fact that the parties had entered into an ante nuptial agreement. On December 20, 1962, a decree was entered embodying the findings made by the Chancellor and decreeing that complainant was entitled to receive alimony or support money from defendant in an amount to be determined by the court. A discretionary appeal was granted, which appeal has been perfected. In this Court, defendant, as appellant, has filed three assignments of error, which, omitting the argumentative supplements to each of same, are as follows.

## "ASSIGNMENT OF ERROR NO. I

"The trial court erred in holding that the ante nuptial property settlement agreement made between the parties hereto, which was executed in, and made pursuant to the laws of the State of Texas, did not bar complainant's right to maintain a separate maintenance suit in this court.

## "ASSIGNMENT OF ERROR NO. II

"The trial court in holding that the divorce obtained by the defendant in the State of Texas, the only marital domicile of the parties, did not bar complainant's right to maintain this action for separate maintenance or alimony, was in violation of the full faith and credit clause of the Constitution of the United States, Article IV, Section 1.

"ASSIGNMENT OF ERROR NO. III

"Even if the courts of this State were not required to give full faith and credit to the Texas divorce decree that it was entitled to in the State of Texas, that is, that after the entrance of said decree, complainant had no claim whatever for maintenance or support against defendant or his property, still under the rules of comity and the policy of this State, as announced in the case of Toncray v. Toncray, 123 Tenn. 476 [131 S. W. 977, 34 L. R. A., N. S., 1106], this Court could not sustain complainant's claim for alimony or separate maintenance, for the reason that Tennessee was not the marital domicile of the parties herein."

We will dispose of these assignments of error in the order named.

The ante nuptial agreement which is quoted above was entered into, as is therein stated, under the provisions of Article 4610 of the Revised Statutes of Texas. Said Article 4610 is as follows:

"Parties intending to marry may enter into such stipulations as they may desire provided they be not contrary to good morals or to some rule of law; and in no case shall they enter into an agreement, or make any renunciation, the object of which would be to alter the legal orders of descent, either with respect to themselves, in what concerns the inheritance of their children or posterity, which either may have by any other person, or in respect to their common children; nor shall they make any agreement to impair the legal rights of the husband over the persons of their common children. No matrimonial agreement

shall be altered after the celebration of the marriage.''

Since the agreement was executed in Texas and provides that it was made in accordance with the provisions of Article 4610 of the Statutes of that State, it must be governed by the laws of Texas. Said agreement provides, ''It is further understood and agreed that in the event of a dissolution of the marriage, that neither party will claim any interest in the property of the other party.'' The Chancellor held with reference to this provision that it is not applicable to the case at bar because ''the complainant is merely seeking support and maintenance and not claiming any interest in the property of the defendant.'' We cannot agree with the Chancellor's construction of the language quoted. Not only would the allowance of alimony or support money to be paid to complainant by defendant come out of and thus impair the existence of property of the defendant; but, in addition, complainant's suit, as originally started, was by attachment of property of the defendant located in Tennessee. It is true the attachment was dissolved, by consent, after defendant had entered his general appearance; but, without the attachment of his property, defendant would never have been in court at all.

The ante nuptial contract also provides, ''It is further understood and agreed that the first party (defendant) will support the second party, and will support the second party out of income from his separate property'', but we contrue that language to mean only that defendant was obligated to support complainant, out of his property, so long as the contemplated marriage continued to exist, and not thereafter. Any other construction would, in our opinion, nullify the provision ''That in the event of a

dissolution of the marriage, neither party will claim any interest in the property of the other party." This construction is also rendered compulsory by the circumstance that the laws of the State of Texas do not permit the allowance of alimony, except alimony pendente lite while divorce suits are pending. Article 4637 of the Revised Statutes of Texas (formerly codified in previous issues of the Texas Statutes as Articles 4640, 2986, and 2870), has been the law in Texas since 1841. Same provides, as follows:

"If the wife, whether complainant or defendant, has not a sufficient income for her maintenance during the pendency of the suit for a divorce, the judge may, either in term time or in vacation, after due notice, allow her a sum for her support in proportion to the means of the husband, until a final decree shall be made in the case."

In addition, in divorce suits, the courts of Texas are authorized by statute to make appropriate awards relative to the property of the parties. Texas being a Community Property State, such provision probably has primary reference to disposition of community property of the parties and to the duty of the court to protect the rights of the parties to their individual property. The Statutes on this subject are contained in Articles 4636 and 4638 of the Revised Statutes of Texas and are as follows:

"Pending suit for a divorce the court, or the judge thereof, may make such temporary orders respecting the property and parties as shall be deemed necessary and equitable.

\* \* \* \* \* \*

"The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

In the case of Pearce v. Commissioner, 315 U. S. 543, 62 S. Ct. 754, 866 L. Ed. 1016, the United States Supreme Court expressly recognized the fact that in Texas the wife is not entitled to alimony, except alimony pendente lite. In that case, the court said:

"By statute in Texas alimony may be awarded during the pendency of a suit for a divorce 'until a final decree shall be made in the case'. [13] Vernon's Ann. Civ. St. Art. 4637. 'This statute is exclusive in its very nature, and no alimony can be decreed by any court in this state except under its express terms.' Martin v. Martin, Tex. Com. App., 17 S. W. (2d) 789, 791, 792. It has been broadly stated in Phillips v. Phillips, Tex. Civ. App., 203 S. W. 77, 79, that, 'In this state the legal duty of the husband to support his wife ceases upon the severance of the marital bonds, nor has a court the power to decree that a husband or his property may be subjected to such support after divorce. Permanent alimony is not provided for by Texas statutes.' And see Pape v. Pape, 13 Tex. Civ. App. 99, 35 S. W. 479; Boyd v. Boyd, 22 Tex. Civ. App. 200, 54 S. W. 380. It is, however, provided by statute that the divorce court shall order 'a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and

their children, if any.' [13] Vernon's Ann. Civ. St. Art. 4638. That power extends not only to community property but to the separate property of the husband.''

In the Texas case of Bond v. Bond, 41 Tex. Civ. App. 129, 90 S. W. 1128, the court said:

"These articles confer all the power which the district court may exercise in making provision for the support of the children upon dissolution of the marriage relation. The allowance cannot be treated as alimony to the wife, because, by the very terms of the article quoted, such an allowance continues only until a final decree shall be made in the case. There is no such thing in this state as permanent alimony. Pape v. Pape, 13 Tex. Civ. App. 99, 35 S. W. [479] 497; Ex Parte Ellis, 37 Tex. Cr. R. 539, 40 S. W. 275, 66 Am. St. Rep. [631] 831; Ex Parte Gerrish (Tex. Cr. App.) [42 Tex. Cr. R. 114] 57 S. W. 1123; Boyd v. Boyd, 22 Tex. Civ. App. 200, 54 S. W. 380; Speer, Law of Married Women, pars. 357, 359.''

In the later case of Jinks v. Jinks, 205 S. W. (2d) 816, one of the Texas Courts of Civil Appeals said:

"We shall discuss first the action of the court in refusing to continue the case in order to afford appellant alimony.

"Appellant's contention seems to be that the trial court should have continued the cause indefinitely and awarded alimony to her for a 'period of time that would have been reasonable and proper.' There is no merit in this contention for two reasons. First,

we know of no rule of law which would authorize a trial court to continue a case indefinitely so as to grant a defendant alimony for 'a period of time that would be reasonable and proper.' This would in effect amount.to permanent alimony which neither the statutes nor the decisions of this State permit. R. S. Art. 4637; Bond v. Bond, 41 Tex. Civ. App. 129, 90 S. W. 1128.''

In the case of McBride v. McBride (Tex. Civ. App.), 256 S. W. (2d) 250, the husband and wife, parties to that case, attempted by agreement to provide in the judgment that the husband should continue to pay the wife, but the appellate court struck down this provision. From the court's opinion in that case, we quote as follows:

''Appellee stresses the voluntary nature of the agreement as making it immune from the statutory bar of permanent alimony.

''There are at least two answers to this argument. First and foremost is that the Court has no jurisdiction and is without authority to grant permanent alimony. Art. 4637, V. A. C. S., Pape v. Pape, 13 Tex. Civ. App. 99, 35 S. W. 479 (San Antonio, writ dism.), Ex parte Ellis, 37 Tex. Cr. R. 539, 40 S. W. 275; Boyd v. Boyd, 22 Tex. Civ. App. 200, 54 S. W. 380; Bond v. Bond, 41 Tex. Civ. App. 129, 90 S. W. 1128; Cunningham v. Cunningham, 120 Tex. 491, 40 S. W. (2d) 46, 75 A. L. R. 1305; Ex parte Guinn, 121 Tex. 66, 41 S. W. (2d) 219; Jinks v. Jinks, Tex. Civ. App., 205 S. W. (2d) 816 (Texarkana); 27 C. J. S., Divorce, sec. 202, p. 884, 15 Tex. Jur. p. 649.

"Permanent alimony is against the public policy of this State."

Most of the cases in Texas dealing with this subject are Court of Civil Appeals cases, because, by Article 1821 of the Revised Statutes of Texas, divorce matters are made final by the decisions of the Court of Civil Appeals. In the case of Cunningham v. Cunningham, 120 Tex. 491, 40 S. W. (2d) 46, 75 A. L. R. 1305, the Supreme Court of Texas did, however, pass on this question. From the opinion of the Supreme Court of Texas in that case, we quote as follows:

"The first legislation in Texas dealing with the jurisdiction of the district court over actions for maintenance of wife or child is 'An act amending the Judiciary Laws of the Republic,' approved by President Sam Houston on December 18, 1837. By section 2 of the act it was provided:

" 'That in addition to the powers given to the district courts by the act establishing the powers and jurisdiction thereof, approved December twenty second, One thousand eight hundred and thirty six, the said district courts shall have power to hear and determine all suits or actions arising between husband and wife for divorce or for a separate maintenance, and may decree divorces as well from the bonds of matrimony as from bed and board, or for a separate maintenance.'—1 Gammel's Law, 1437.

"It thus appears that it was originally the public policy of the Republic to confer authority on the district court to compel either spouse to provide the other with proper maintenance.

"After a brief time, the Congress enacted a change in the public policy of the Republic, disclosed by sections 8, 6, 13, and 4 of the Act of January 6, 1841, which have been continuously re-enacted in substance, and are now embodied in articles 4637, 4636, 4639, and 4638, Complete Texas Statutes (Vernon's Ann. Civ. St. arts. 4637, 4636, 4639, and 4638)."

"Whatever doubt might have arisen as to the correct construction of the provisions of the act of 1841 has been removed by their consistent interpretation by the appellate courts for ninety years.

"* * * [in Ligon v. Ligon, 39 Tex.. Civ. App. 392, 87 S. W. 838, 839] The Dallas Court of Civil Appeals declared: 'Under the laws of this state, courts are not authorized in divorce suits to provide permanent alimony for the support of the divorced wife. An allowance may be made for her support during the pendency of the suit for divorce, until the final decree is made in the case. Rev. St. art. 2986. The final decree may also order a division of the common estate, if there be such. Id. art. 2980. But the court cannot divest title out of one of the spouses, and invest it in the other. Neither can the court compel the husband by final decree, to support the divorced wife. Pape v. Pape, 13 Tex. Civ. App. 99, 35 S. W. 479.' Boyd v. Boyd, 22 Tex. Civ. App. 200, 54 S. W. 380, 381."

The law of the State of Texas being as quoted above, and with the ante nuptial contract of the parties to this cause providing, "That in the event of a dissolution of the marriage, that neither party shall claim any interest in the property of the other party", and with the marital

domicile of the parties being the State of Texas, we think the right of complainant to support from defendant terminated with the granting of the divorce in Texas in his favor. Assignment of Error No. I is accordingly sustained.

■ By Assignment of Error No. II, defendant contends that the Chancellor erred in refusing to give full faith and credit to the Texas divorce decree, in violation of the provisions of Article IV, section 1 of the Constitution of the United States, which provides,

"Full Faith and Credit shall be given in each State to the public Acts, Records, judicial Proceedings of ever other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Title 28, section 1738, of United States Code Ann., after setting forth how judicial proceedings of a State or Territory shall be authenticated, provides as follows:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. June 25, 1948, c. 646, 62 Stat. 947."

It is the contention of defendant that, with full faith and credit given to the Texas divorce decree in his favor, complainant could not be entitled to support and maintenance at his expense after the granting of that divorce decree. With this contention we agree.

In Atherton v. Atherton, 181 U. S. 155, 21 S. Ct. 544, 45 L. Ed. 794, a question almost identical with that presented in the instant case was involved. In that case, the plaintiff, suing in New York, was, prior to the marriage of the parties on October 17, 1888, a resident of New York, and the defendant was a resident of Kentucky. Immediately after the marriage the parties went to Kentucky and lived there as husband and wife until October 3, 1891. At that time, as found by the United States Supreme Court, the wife left the husband in Kentucky because of his cruel and abusive treatment, took their child and returned to New York with the intention of not returning to Kentucky, and she resided in New York until she filed suit for a divorce from bed and board and asked that she be granted support for herself and child. The husband appeared in the New York suit and interposed the defense that on November 14, 1893 he had obtained a divorce from his wife, the plaintiff in the New York suit in the court of Jefferson County, Kentucky. His divorce, there obtained, was predicated on the allegation and proof that the wife, had, without the fault of the husband, abandoned him. In the Kentucky suit, constructive service only was had upon the wife, although following provisions of Kentucky statutes an attorney had been appointed by the court to inform the defendant of the nature of the suit and he had written the wife a letter addressed to her New York address, which letter was not returned. The New York courts held that the Kentucky decree was inoperative, gave judgment for the wife for a divorce from bed and board, and granted support for her and her child. The United States Supreme Court reversed the New York courts on the ground that the New York courts should have given full faith and

credit to the Kentucky divorce decree which had been rendered by the court of the only marital domicile of the parties. From the opinion of the United States Supreme Court in that case, we quote as follows:

"This case does not involve the validity of a divorce granted, on constructive service, by the court of a state in which only one of the parties ever had a domicile; nor the question to what extent the good faith of the domicile may be afterwards inquired into. In this case, the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband, and which was the only matrimonial domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky.

\* \* \* \* \* \*

"We are of opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky, and were actually made, to give the wife actual notice of the suit in Kentucky, as to make the decree of the court there, granting a divorce upon the ground that she had abandoned her husband, as binding on her as if she had been served with notice in Kentucky, or had voluntarily appeared in the suit. Binding her to that full extent, it established, beyond contradiction, that she had abandoned her husband, and precludes her from asserting that she left him on account of his cruel treatment.

"To hold otherwise would make it difficult, if not impossible, for the husband to obtain a divorce for the cause alleged, if it actually existed. The wife

not being within the state of Kentucky, if construc- tive notice, with all the precautions prescribed by the statutes of that state, were insufficient to bind her by a decree dissolving the bond of matrimony, the husband could only get a divorce by * * * suing her there he would admit that she had acquired a separate domicile (which he denied), and would disprove his own ground of action, that she had abandoned him in Kentucky.

"The result is that the courts of New York have not given to the Kentucky decree of divorce the faith and credit which it had by law in Kentucky, and that therefore their—

"Judgments must be reversed, and the case remanded to the Supreme Court of New York for further proceedings not inconsistent with this opinion."

In the case of Thompson v. Thompson, 226 U. S. 551, 33 S. Ct. 129, 57 L. Ed. 347, except that the divorce decree involved was a Virginia divorce instead of a Kentucky divorce, the United States Supreme Court reached the same result. It should be noted that the case of Thompson v. Thompson was decided after the case of Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867. Doubt might otherwise be cast on whether the rule announced in Atherton v. Atherton was still applicable after the decision in Haddock v. Haddock. Even if such doubt had existed, however, it would have been removed when the decision in Haddock v. Haddock was overruled by Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279. From the opinion of the U. S. Supreme Court in the Thompson case, we quote as follows:

"In the present case it appears that the parties were married in the state of Virginia, and had a matrimonial domicile there, and not in the District of Columbia or elsewhere. The husband had his actual domicile in that state at all times until and after the conclusion of the litigation. It is clear therefore, under the decision in the Atherton Case and the principles upon which it rests, that the state of Virginia had jurisdiction over the marriage relation, and the proper courts of that state could proceed to adjudicate respecting it upon grounds recognized by the laws of that state, although the wife had left the jurisdiction and could not be reached by formal process."

"This being so, it is clear that the resulting decree is entitled, under the act of Congress, to the same faith and credit that it would have by law or usage in the courts of Virginia. As the laws of that state provide for a divorce from bed and board for the cause of desertion, and confer jurisdiction of suits for divorce upon the circuit courts (Va. Code, 2257-2260, 2264, 2266; Bailey v. Bailey, 21 Gratt. 43; Carr v. Carr, 22 Gratt. 168; Lathan v. Latham, 30 Gratt. 307) ; and since the courts of Virginia hold upon general principles that alimony has its origin in the legal obligation of the husband to maintain his wife, and that although this is her right, she may by her conduct forfeit it, and where she is the offender, she cannot have alimony on a divorce decreed in favor of the husband (Harris v. Harris, 31 Gratt. 13), it is plain that such a decree forecloses any right of the wife to have alimony or equivalent maintenance from her husband under the law of Virginia.

"From this it results that the Court of Appeals of the District of Columbia correctly held that the Virginia decree barred the wife's action for maintenance in the courts of this District."

In both the Atherton case and in the Thompson case the Supreme Court of the United States recognized the distinction between the rights of a wife for alimony and separate maintenance in the State of her marital domicile and her rights in another State where she had acquired a new domicile. On this ground the Atherton case and the Thompson case may both be reconciled with the decision of the United States Supreme Court in Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, although that case has since been overruled by the Supreme Court of the United States in the case of Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279.

The Supreme Court of Tennessee also recognized this distinction in Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A., N. S., 1106, Ann. Cas. 1912C, 384, [284], in which case, in spite of Haddock v. Haddock, full faith and credit was, by comity, awarded to a Virginia divorce decree, so far as it terminated the marital status of the parties; but, following Haddock v. Haddock, full faith and credit was denied to the Virginia decree, awarded on constructive service, so far as the right of complainant to recover alimony in the State of matrimonial domicile (Tennessee) was concerned. From the opinion of the Tennessee Supreme Court in the Toncray case, written by Mr. Justice Green, later Chief Justice, we quote as follows:

"The question then presented to us is whether a proceeding for alimony can be maintained by the

wife in this state, this being the matrimonial domicile and all the while her domicile, against a husband who had previously obtained from her in a foreign state, upon publication, a divorce *a vinculo,* which divorce is recognized as valid and binding is (sic) so far as it severs the marriage tie. This is merely a suit for alimony in this court, for the chancellor has in effect settled the validity of the divorce for other purposes, and we are without power to review his action in this respect, if we so desired." Toncray v. Toncray, 123 Tenn. 482, 131 S. W. 978, 34 L. R. A., N. S., 1106.

Recognizing that there was a conflict of authority on the effect to be given divorce decrees of foreign jurisdictions based on constructive service, the Tennessee Supreme Court's opinion referred to a number of cases on this subject, and adopted the policy of recognizing foreign divorce decrees granted on constructive service, so far as they effected termination of the marital status, but refused to recognize same as cutting off the right of a wife to alimony in the State of the matrimonial domicile. From the opinion of Mr. Justice Green, on this phase of the case of Toncray v. Toncray, we quote as follows:

"Applying to principles announced in the foregoing cases, we are of opinion and hold that, where this is the state of the matrimonial domicile of the parties, an action can be maintained by the wife, still domiciled here, for alimony, although the husband may have obtained a divorce from her upon publication in a foreign state. Such ex parte proceedings of a foreign state could be no more effective as to her rights in this respect than ex parte proceedings of our own Legislature referred to in Richardson v. Wilson, 8 Yerg. 67, heretofore mentioned.

"We are aware that this conclusion is subject to some criticism. It is well-nigh impossible to formulate any rule respecting foreign divorces that will conform equally to the due process clause of the federal Constitution, on the one hand, and to the full faith and credit clause, on the other. If we give full effect, or any effect, to such judgments, such action seems to conflict with the due process clause. If we give no effect, or only partial effect, to such judgments, such action seems to conflict with the full faith and credit clause.

"The only apparent way to avoid these difficulties is to hold divorce proceedings to be in rem, and to ascribe to the court, granting a divorce on constructive service, jurisdiction of the res, or marital relation, and hold its decree effective as directed against a thing of which it had jurisdiction.

"This theory was destroyed by the Supreme Court in Haddock v. Haddock, supra, where it was held that the res was divisible, and so much of the marriage relation as pertained to the status of the wife remained with her in the state of matrimonial domicile, and never came within the jurisdiction of the foreign court.

"The effect of Haddock v. Haddock is bound to be that neither of the constitutional provisions referred to is applicable to divorce proceedings of this character, for the court in that case disavowed the intimation of 'a doubt as to the power of the state of New York to give to a decree of that character rendered in Connecticut, within the borders of the state of New York and as to its own citizens, such efficacy as

it may be entitled to in view of the public policy of that state.'

"The Supreme Court of the United States is the ultimate expounder of the federal Constitution, and, so long as Haddock v. Haddock stands, each of the states is entitled to give to such decrees as the one here under consideration just that degree of efficacy, within its borders as to its citizens, which its courts may determine to be the state's proper policy.

"We think the policy of the chancellor's decree is the true one—the policy most consistent with justice, good morals and comity—and we adopt it as the course henceforth to be taken by the courts of this state." Toncray v. Toncray, 123 Tenn. 491-492, 131 S. W. 980, 34 L. R. A., N. S., 1106.

As pointed out above, Haddock v. Haddock has been overruled by Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279. It is, therefore, our opinion that the Chancellor erred in the instant case in failing to grant full faith and credit in favor of defendant to the Texas divorce decree. Assignment of Error No. II is accordingly sustained.

■ By Assignment of Error No. III, defendant contends that, even if the courts of this State were not required to give to the Texas divorce decree in favor of defendant the same full faith and credit to which it is entitled in Texas, complainant is, nevertheless, entitled to no relief in the instant case. This contention is based upon two grounds. We are of opinion that defendant is right on both grounds.

In the first place, it is contended that Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A., N. S.,

1106, established the policy of the State of Tennessee at a time when under the United States Supreme Court's decision in Haddock v. Haddock, it was not required to grant full faith and credit to any part of a divorce decree of another jurisdiction obtained on constructive service, as being that of awarding full faith and credit to foreign divorce decrees so far as they severed the marital relationship, reserving only the right to award to a wife so divorced alimony in the State of the matrimonial domicile.

Counsel for complainant in the instant case rely on the decision of the Supreme Court of Tennessee in Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A., N. S., 1106, ignoring the limitation as to matrimonial domicile, and that of the Supreme Court of the United States in Estin v. Estin, 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, 1 A. L. R. (2d) 1412, as authorities justifying the award of alimony to any wife whose husband has obtained in another jurisdiction a divorce decree based on constructive service, provided, only, that the complaining wife is, at the time the suit is brought, domiciled in the State where she sues.

The case of Estin v. Estin was decided after Haddock v. Haddock had been overruled by Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279. In the Estin case, the wife had obtained a separate maintenance decree in New York against her husband in which proceeding personal service had been had on the husband. The husband later moved to Nevada where he obtained a decree of divorce, based on constructive service only. In a later action in New York by the wife to enforce the amount in arrears under the former New York separate maintenance decree, the husband interposed as a defense

the Nevada divorce decree. The United States Supreme Court gave full faith and credit to the Nevada divorce insofar as it dissolved the marriage, but held that it did not invalidate the judgment of the New York court for separate maintenance. New York was, however, the marital domicile of the parties there involved and the United States Supreme Court held that the rights already acquired by the wife in the State of matrimonial domicile, based on personal service, could not be adversely affected by the Nevada decree. The U. S. Supreme Court grounded its decision not only on the fact that the wife's interest was a property right, but also on the ground that the State of New York, which was the State of the matrimonial domicile, had an interest in the welfare of its citizens.

Counsel for complainant contend that the court's jurisdiction in the instant case depends upon the mere fact that complainant is and was at the time of instituting her suit, domiciled in Tennessee; and that the courts of Tennessee may protect the rights of its citizens, notwithstanding the fact that the marital domicile of the parties involved was elsewhere. There are authorities both pro and con on this question, which are collected in a full annotation of the subject in 28 A. L. R. (2d) at pages 1378, et seq. Among the cases holding in accord with the contentions of counsel for complainant is Turner v. Turner, 44 Ala. 437, which case is discussed in the opinion of our Supreme Court in the case of Toncray v. Toncray. The Supreme Court of Tennessee, however, in Toncray v. Toncray, chose to rest its decision on the ground that Tennessee was the matrimonial domicile of the parties there involved, and the only domicile of the wife who was complainant in that cause. The Supreme

Court of the United States in Estin v̇. Estin also chose
to· rest its decision at least in part on the same ground,
viz., that New York was the matrimonial domicile of the
plaintiff in that case. The case of Toncray v. Toncray
fixed the public policy of the State of Tennessee as limit-
ing the right of a wife to recover alimony from a husband
who had obtained a divorce on constructive service in
another State to cases where Tennessee is or was the
matrimonial domicile of the parties, and we do not feel
justified in departing from the public policy so estab-
lished. That policy, as we interpret the decision in Ton-
craẏ v. Toncray, was to limit the refusal to award full
faith and credit to foreign divorce decrees based on con-
structive service to those cases where the matrimonial
domicile of the parties was Tennessee. That policy was
established when, under the decision of Haddock v. Had-
dock, no limit need have been placed and Tennessee could
have refused to give full faith and credit to even that
part of the· Virginia decree which terminated the marital
relations of the parties. Now that Haddock v. Haddock
has been overruled, we certainly could not be justified in
undertaking to extend the policy announced in the Ton-
cray case.

Since the State of Tennessee, in Toncray v. Toncray,
by comity awarded full faith and credit to a part of the
Virginia decree there involved, when under the decision
of Haddock v. Haddock it might have withheld full faith
and credit to all of the Virginia decree, now that Had-
dock v. Haddock has been overruled, we think, *a fortiori*,
that the same comity should extend full faith and credit,
with all of its consequences, to the Texas decree involved
in the instant case.

In the second place, counsel for defendant contends that since Texas was the matrimonial domicile of the parties involved in the instant case, and since under Texas law complainant could have no right to alimony or support by defendant after the granting of the Texas divorce decree, the courts of Tennessee are without jurisdiction or authority to award a decree for separate maintenance against defendant after the matrimonial status has been destroyed by valid decree of the Texas court. We think this contention is also sound. The right to support and maintenance, which the Tennessee courts are called on to enforce must arise, if at all, out of the marital status, which obligates a husband to support his wife. This being true, the only rights which complainant in the instant case could have acquired against defendant, arising out of the marital status, must be limited to such rights as the laws of Texas gave to her. There were no such rights remaining to her after the dissolution of the marriage by valid divorce decree in Texas, and consequently complainant in the instant case retains no right which the courts of Tennessee may be called upon to enforce. The right which the courts of Tennessee enforced in Toncray v. Toncray was a right which the complainant in that case had acquired in Tennessee, arising out of the marital status in this State, Tennessee being the matrimonial domicile of the parties. The Supreme Court of Tennessee held in the Toncray case, just as did the Supreme Court of the United States in the Estin case, that such right could not be destroyed by the divorce decree of another jurisdiction based on constructive service.

For the reasons stated, we think Assignment of Error No. III, as well as Assignments of Error Nos. I and II, should be sustained.

It results that the decree of the Chancellor must be reversed and the complainant's suit in the case at bar must be dismissed. The costs of the cause, including those of the appeal as well as those of the lower court, will be adjudged against the complainant and the sureties on her cost bond and attachment bond, given in the lower court.

Avery, (P.J.,W.S.), and Carney, J., concur.

## On Petition for Rehearing.

In this cause, counsel for Appellee, who was complainant in the lower court, has filed an earnest petition to rehear. The opinion of the court, reversing this cause, was filed September 3, 1963, and the petition to rehear was filed September 20, 1963. Under the provisions of Rule 22 of the Rules of this court, said petition should have been filed within 10 days after September 3, 1963. Even if it had been filed within the time allowed by our rules, however, it would have to be denied.

In the main, said petition to rehear presents merely a reargument of the cause as same was presented at the hearing and in counsel's brief. With one exception, every point presented in the petition to rehear was presented at the hearing of the cause and in complainant's brief. After careful consideration, every point presented was fully considered by this court and was disposed of adversely to complainant in the opinion filed September 3, 1963. We find no reason for changing our opinion, and we adhere to same.

The one new point presented by the petition to rehear is a contention that complainant should have been entitled to recover from defendant support money covering, at least, the period of time between the date of

separation of the parties and the date on which the Texas divorce decree in favor of defendant was granted. This contention is, also, without merit. No proof on this limited question was offered in the lower court, and no contention was made in this court for recovery of such limited amount until the filing of the petition to rehear. The contention seems to be predicated upon the theory that the ante nuptial contract obligated defendant at least to this extent; and, on the further theory that, since the Texas court was authorized, under the Texas statutes, to award support money or alimony pendente lite during the time the divorce suit was pending, the Tennessee courts can do now what the Texas court could have done then. In our opinion, the time and the place for complainant to have made her claim for support money, covering the time between the separation of the parties and the awarding of the divorce in favor of defendant, was in the Texas court in which the divorce suit was filed and tried. She saw fit to ignore that divorce suit, even though she had notice of same. The Tennessee courts cannot do for her now what the Texas court might have done while that suit was pending.

The petition to rehear is denied.

Avery, (P.J.,W.S.), Carney, J., concur.