513 A.2d 483

**Mona DOYLE, Appellant,**

v.

**Patrick DOYLE, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed Aug. 11, 1986.

Maureen D. Serpico, Doylestown, for appellant.

Robert L. White, Langhorne, for appellee.

Before CIRILLO, POPOVICH and MONTEMURO, JJ.

MONTEMURO, Judge:

This appeal lies from an order entered by the Bucks County Court of Common Pleas on May 15, 1985, denying appellant's petition to enforce, register and adopt a foreign divorce decree, pursuant section 506 of the Divorce Code.[1]

On March 29, 1983, the District Court of Dallas County, Texas, 330th Judicial District, entered a decree which di-

1. Act of April 2, 1980, P.L. 63 No. 26 §§ 101–801, 23 PS §§ 101–801.

vorced the parties, and "approved and incorporated" a property settlement agreement dated January 11, 1983.[2]

The section of the property settlement agreement that is the subject of this appeal reads as follows:

PERIODIC PAYMENT

1. In discharge of PATRICK E. DOYLE'S marital obligations toward MONA DOYLE, in consideration of his love and affection for her, and in consideration of her past performance, and for maintenance and support, and not as a part of any property division, distribution, settlement, or payment for her interest in community property. Mr. Doyle shall pay to Mrs. Doyle, beginning on or before the first day of the month following the sale of the parties' homestead in Dallas, and on or before the first of each month thereafter for a period of 18 months the sum of $1,400.00; and he shall then pay the sum of $1,200.00 per month for the next 18 months continuing on or before the first day of the month following the last $1,400.00 payment, making a total of 36 monthly payments hereunder.

2. Mr. Doyle's obligation under this section V, following the divorce of the parties, shall terminate in the event of the death of either party. The parties acknowledge that payments under this section shall be reported as income by Mrs. Doyle on her U.S. Individual Income Tax Return and shall be taken as a deduction by Mr. Doyle on his U.S. Individual Income Tax Return.

3. Mrs. Doyle shall have no right or power to anticipate, pledge, assign, sell, transfer, alienate or encumber payments hereunder, in any way; nor shall any such payments in any manner be liable for or subject to the debts, liabilities or obligations of Mrs. Doyle; nor shall Mr. Doyle be liable to any vendee, transferee, alienee, encumberee, pledgee or mortgagee therefore.

2. The divorce decree stated that the Property Settlement agreement was "just and right" and it was "approved and incorporated into this Decree by reference as if it were recited herein verbatim."

4. Monthly payments described in this Section are separate and apart from, and in addition to the property division described in Sections I and II hereof.

Appellee abided by the terms of this section of the agreement until December, 1984; sometime thereafter, both parties moved from Texas to Pennsylvania.

On March 1, 1985, appellant filed a petition to enforce, register and adopt a foreign divorce decree, which was denied by the Bucks County Court of Common Pleas. In essence, appellant requests that we reverse the hearing court and adopt and enforce, as "alimony", the parties' Texas property settlement agreement providing for periodic payments to appellant from appellee. Appellant seeks to have the Texas agreement adopted pursuant to section 506 of the Divorce Code as she would then be entitled to the enforcement protection provided by section 503[3] of the Divorce Code. Section 506 provides:

### Enforcement of foreign decrees

Whenever a person subject to a valid decree of a sister state or territory for the payment of alimony, temporary alimony, or alimony *pendente lite*, or his or her property is found within this Commonwealth, the obligee or such a

**3.** § 503. Enforcement of arrearages

If at any time a party is in arrears in the payment of alimony or alimony *pendente lite* as provided for in sections 501 and 502[ ] after hearing, the court may, in order to effect payment of the arrearages:

(1) Enter judgment.

(2) Authorize the taking and seizure of goods and chattels and collection of the rents and profits of the real estate of the party.

(3) Attach no more than 50% of the wages of the party.

(4) Award interest on unpaid installments.

(5) Require security to insure future payments.

(6) Issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court at such time as the court may direct. If the court finds, after hearing, that the said person willfully failed to comply with the court order, it may deem said person in civil contempt of court and in its discretion make an appropriate order including, but not limited to, commitment of said person to the county jail for a period not to exceed six months.

1980, April 2, P.L. 63, No. 26, § 503.

decree may petition the court, where the obligor or his or her property is found, to register, adopt as its own, and to enforce the said decree as a duly issued and authenticated decree of a sister state or territory. Upon registration and adoption, such relief and process for enforcement as is provided for at law, in equity, or by court rule, in similar cases originally commenced in this Commonwealth, shall be available, and a copy of the decree and order shall be forwarded to the court of the state or territory which issued the original decree and may question the jurisdiction of that court if not otherwise barred. Interest may be awarded on unpaid installments and security may be required to insure future payments as in such case originally commenced in this Commonwealth. Where property of the obligor, but not his person, is found within this Commonwealth, there shall be jurisdiction *quasi in rem* and, upon registration and adoption of the decree of the sister state or territory such relief and enforcement of the decree shall be available in other proceedings which are *quasi in rem*.

■ It is undisputed that court ordered "alimony" contravenes the public policy of Texas and is not provided for under Texas law.[4] In *Francis v. Francis*, 412 S.W.2d 29 (Tex.1967), the Texas Supreme Court considered the validity of monthly payments required under a property settlement agreement. The court stated:

When its true meaning is distilled from the statutes and the court decisions of this State, alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce.

From what has been said, it follows that obligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after a divorce decree becomes final, are not obligations

4. Texas Fam.Code Ann. § 3.59 (Vernon 1975).

to pay alimony and do not violate the public policy of this State.

*Id.* at 33. The *Francis* court held that support obligations assumed in separation agreements are contractual in nature and will be enforced under the law of contracts. *Id.*

The agreement in the instant case fits squarely into the *Francis* definition of contractual support obligations. Under Texas law this agreement would have whatever legal force the law of contracts confers, since lacking an alimony statute, Texas provides no method of enforcing these compacts other than a suit in contract. *Shaw v. Shaw*, 623 S.W.2d 148 (Tex.Ct.App.1981).

█ The plain language of section 506 of our Divorce Code applies to "alimony, temporary alimony, or alimony *pendente lite*." "When interpreting a statute we are guided by the 'plain meaning' rule of construction. 1 Pa.C.S. § 1903; *Commonwealth v. Mumma*, 489 Pa. 547, 414 A.2d 1026 (1980). The plain words of a statute cannot be disregarded where the language is free and clear from all ambiguity. *Hyser v. Allegheny County*, 61 Pa.Commw. 169, 434 A.2d 1308 (1981)." *Commonwealth v. Baraniak*, 350 Pa.Super. 459, 504 A.2d 931, 933 (1986). Clearly, the language in section 506 does not encompass the property settlement entered into by the parties here, as this agreement, which must be interpreted in accordance with Texas law, is contractual in nature and not a grant of alimony in any form. *See Miller v. Miller*, 463 S.W.2d 477 (Tex.Civ. App.1971); *Smith v. Smith*, 460 S.W.2d 204 (Tex.Civ.App. 1970).

We can not, as appellant wishes, transform the parties' contract for support into an alimony award enforceable under section 506 of the Divorce Code. In a case presenting nearly identical facts, *Peddicord v. Peddicord*, 278 Ark. 164, 644 S.W.2d 582 (1983), the Arkansas Supreme Court, refusing to construe a Texas support agreement as alimony under Arkansas law, stated:

> [T]he appellant is asking the courts of Arkansas to construe her Texas judgment in a manner that the courts

of Texas would refuse and to provide her with a method of enforcing those judgments that would be denied her in Texas. Article IV, § 1 of the Constitution of the United States requires us to accord full faith and credit to the Texas judgments. We are required 'to give to the judgments of other states the same conclusive effect between the parties and their privies as is given such judgments in the state in which they were rendered.' Leflar, American Conflicts Law § 63 (Third Ed.1977). We find no authority which requires us to give out-of-state judgments an effect that they would not be given in the state in which they were rendered.

*Id.* at 166, 644 S.W.2d at 583.

■ The appeals court of Tennessee in *Burton v. Burton,* 52 Tenn.App. 484, 376 S.W.2d 504 (1963), also faced with an appellant asking for court recognized alimony following a Texas divorce decree, held that the appellant was barred from maintaining an action for maintenance or alimony subsequent to a Texas divorce decree.

It is the contention of defendant that, with full faith and credit given to the Texas divorce decree in his favor, complainant could not be entitled to support and maintenance at his expense after the granting of that [Texas] divorce decree. With this contention we agree.

*Id.* at 499, 376 S.W.2d at 511. We are in full accord with the holdings of the Arkansas Supreme Court in *Peddicord* and the Tennessee Court of Appeals in *Burton.* Were we to provide appellant with a non-contractual means of enforcing the agreement, not available to her under Texas law, we would be in violation of the full faith and credit clause of the United States Constitution U.S. Const. art. IV, § 1.[5]

**5.** Article IV, § 1, of the United States Constitution states:

Section 1. Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Accordingly we find appellant's petition was properly denied.

Order affirmed.