655 A.2d 587

**Dorothy A. POLITO**

v.

**Robert V. POLITO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1994.

Filed March 13, 1995.

Norman Perlberger, Bala Cynwyd, for appellant.

James S. Sorrentino, Lancaster, for appellee.

JOHNSON, Judge:

Robert V. Polito (Husband) appeals from the order directing him to pay $225 per week in alimony to Dorothy A. Polito (Wife). In this appeal, we are asked to determine whether the trial court erred in directing that an alimony order be entered in favor of Wife after she had obtained a divorce decree in a foreign jurisdiction that did not provide for such orders.

Husband and Wife were married in 1978 in Lancaster County, Pennsylvania. In January, 1981, Husband and Wife entered into a property settlement agreement (the Agreement) indicating that they had been separated for six months and stating their intention to make arrangements for the settlement of their property rights.

Paragraph three of the Agreement states:

3. SUPPORT. ROBERT V. POLITO agrees to pay to DOROTHY A. POLITO and DOROTHY A. POLITO agrees to receive from ROBERT V. POLITO the sum of Two Hundred Twenty Five Dollars ($225.00) a week for her support and maintenance. The parties hereto are contemplating a divorce under the No–Fault Divorce Code of the Commonwealth of Pennsylvania effective July 1, 1980. The parties hereto agree that if a divorce is instituted between

the parties, that this sum shall be entered as alimony in that proceeding and shall be subject to all the incidences thereof. The entry of that Order as alimony shall supersede any further provisions of this paragraph.

Wife then traveled to the Dominican Republic to obtain a divorce. On February 16, 1981, the Court of First Instance of the Judicial District of Santo Domingo, Dominican Republic, issued a decree of divorce. The pertinent portion of the divorce decree states:

SECOND: That the agreement entered into between the parties dated the 28th day of January of 1981, shall survive and shall not be merged in this Judgment of divorce and that the parties are hereby ordered and directed to comply with each and every provision of the said agreement.

It is undisputed that the law of the Dominican Republic does not provide for alimony following divorce. Accordingly, no order directing Husband to pay alimony was entered.

Nevertheless, Husband paid Wife $225 per week until December 1, 1992. In February, 1993, after Husband ceased making weekly payments, Wife filed a Petition for Relief under 23 Pa.C.S. § 3105 (Effect of agreement between parties). Wife then filed an Amended Petition for Relief under 23 Pa.C.S. § 3705 (Enforcement of foreign decrees). Following a hearing, the trial court issued an order awarding alimony to Wife. Husband now appeals.

On appeal, Husband, in essence, asserts that the trial court erred when it (1) interpreted the Agreement; (2) awarded alimony even though the law of the Dominican Republic does not provide for post-divorce alimony; (3) asserted subject matter jurisdiction over the alimony claim; and, (4) entered an award for alimony rather than limiting Wife to contractual remedies.

██ It is well-established that "[t]he role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court." *Lee v. Lee,* 352 Pa.Super. 241, 245, 507 A.2d 862, 865 (1986). Such "[a]n abuse . . . does

not necessarily imply a willful abuse, but if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence or the record, discretion is then abused and it is the duty of the appellate court to correct the error." *Id.*

■ First, Husband argues that the trial court erred in its interpretation of the Agreement. Husband asserts that the language of the Agreement required that an alimony order be entered in the divorce proceeding. However, because the Dominican court was not authorized to enter such an order, Husband argues that the trial court could not have entered an alimony order pursuant to the Agreement. We disagree.

"The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent." *Laudig v. Laudig,* 425 Pa.Super. 228, 233, 624 A.2d 651, 653 (1993). It is clear from the language of the Agreement that the parties intended that Wife receive alimony. In fact, Husband made payments in the agreed-upon amount for eleven years following the parties' divorce. Therefore, we find no error in the trial court's interpretation of the Agreement.

■ Second, Husband asserts that the trial court erred in awarding Wife alimony because the law of the Dominican Republic does not provide for post-divorce alimony. In making this argument, Husband relies on *Doyle v. Doyle,* 355 Pa.Super. 384, 513 A.2d 483 (1986). In *Doyle,* the parties entered into a property settlement agreement (PSA) in Texas and were divorced in that state. Although Texas law does not provide for alimony, the PSA, which included an agreement to pay alimony, was incorporated into the divorce decree. The parties then moved to Pennsylvania, where Wife filed a petition to enforce, register and adopt a foreign divorce decree. Our Court reasoned that, because Texas did not provide a method for enforcement of support obligations other than through a suit in contract, we could not transform the parties' contract into an alimony award enforceable under the Divorce Code.

However, *Doyle* is distinguishable from the present case. *Doyle* is limited to situations in which we are asked to enforce an agreement entered into in a foreign jurisdiction and incorporated in a foreign decree where that jurisdiction's law does not allow for the terms of the agreement. Here, the parties entered into the Agreement in Pennsylvania, in contemplation of a Pennsylvania divorce. In their Agreement, the parties expressly provided for the entry of an order for support and maintenance consistent with the public policy of this Commonwealth. Thus, because the agreement was entered into in Pennsylvania, it remains enforceable here.

█ Third, Husband asserts that the trial court erred in asserting jurisdiction over the alimony claim. In pertinent part, 23 Pa.C.S. § 3104 provides:

§ 3104. **Bases of Jurisdiction**

(a) **Jurisdiction.** The courts shall have original jurisdiction on cases of divorce . . . and shall determine, in conjunction with any decree granting a divorce . . . the following matters, if raised on the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:

(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial, or separation agreement and including . . . the order of any spousal support, alimony, alimony pendente lite, counsel fees or costs authorized by law.

\*     \*     \*     \*     \*     \*

(d) **Foreign Forum.** After the dissolution . . . of a marriage in a foreign forum where a matter under subsection (a) has not been decided, a court in this Commonwealth shall have jurisdiction to determine a matter under subsection (a) to the fullest extent allowed under the Constitution of the United States.

The trial court found, and we agree, that the Dominican court did not decide the issue of alimony. While the Dominican court declared that the parties' Agreement "shall survive

and shall not be merged in this Judgment of divorce" and ordered the parties to "comply with each and every provision of the said agreement," it did not, and indeed could not, enter an order of alimony or specifically direct Husband to pay alimony. Therefore, the trial court had jurisdiction to adjudicate the issue of alimony and enter an appropriate order. The parties expressly agreed that should they divorce, an alimony order would be entered in favor of Wife in the amount of $225 per week. The trial court, without any modification of the parties' agreement, directed that an alimony order be entered. Accordingly, we cannot find that the trial court abused its discretion when it effectuated the clear intent of the parties.

Finally, Husband asserts that, because the Agreement was executed prior to 1988, it cannot be enforced under 23 Pa.C.S. § 3105(a), but must be enforced through contractual remedies. The trial court properly directed that an alimony order be entered. Husband concedes in his Brief that "[i]n the court below, [Wife] did not offer any argument for the application of § 3105(a); nor did the trial court mention or base its decision on this section." Accordingly, we need not consider nor determine whether § 3105 is applicable in this case.

Based on the foregoing, we affirm the trial court order directing Husband to pay alimony to Wife in the sum of $225 per week.

Order Affirmed.

OLSZEWSKI, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting.

We concur in part, as we agree that the law of the support agreement should control rather than the law of the divorce decree, and that the trial court therefore had the power to enforce the agreement as if it were a court order for alimony.

We would hold, however, that the trial court erred in reaching out to transform the parties' agreement into an alimony order. By affirming that improper and unnecessary action, the majority would disregard the precedent which

requires our courts to respect the private contractual nature of such agreements, and we respectfully dissent on this point.

The section of the contract which is at issue reads as follows:

[Husband] agrees to pay [Wife] ... the sum of [$225 per week] for her support and maintenance. The parties hereto are contemplating a divorce under the No–Fault Divorce Code of the Commonwealth of Pennsylvania effective July 1, 1980. *The parties hereto agree that if a divorce is instituted between the parties, that the sum shall be entered as alimony in that proceeding and shall be subject to all the incidences thereof.* The entry of that Order shall supersede any further provisions of this paragraph.

(Emphasis supplied.)

Clearly, the parties originally intended to be divorced according to the Pennsylvania Divorce Code. The underlined provision became impossible to fulfill, however, when Wife sued for divorce in the Dominican Republic: Wife concedes that the law of that sovereign does not recognize post-divorce alimony. Having failed to take effect "in that proceeding," the provision became void.[1]

In its divorce decree, the foreign court incorporated the parties' agreement with the following language:

That the agreement entered into between the parties ... shall survive and shall not be merged in this Judgement of divorce and that the parties are hereby ordered and directed to comply with each and every provision of the agreement.

Civil Decree No. 228/81 at 3–4. The effect of language rejecting merger of the agreement into the decree is clear: the agreement "remains a contract between the parties, in

---

1. We also note that because Husband entered an appearance in the foreign proceeding, the doctrine of "divisible divorce" could not apply in this case. When applicable, this doctrine allows the parties' marital status to be adjudicated in a different forum than the economic aspects of the divorce. *See Sohmer v. Sohmer*, 318 Pa.Super. 500, 505–07, 465 A.2d 665, 668 (1983) (holding that the doctrine of "divisible divorce" is limited to cases of foreign *ex parte* divorces).

which the court has no involvement." *McMahon v. McMahon,* 417 Pa.Super. 592, 602, 612 A.2d 1360, 1365 (1992). Absent proper authorization on the face of the agreement, therefore, a court may not unilaterally modify an unmerged agreement for spousal support in the same manner as it would modify an alimony order. *Id.; Brower v. Brower,* 413 Pa.Super. 48, 55–57, 604 A.2d 726, 730 (1992); *accord* 23 Pa.C.S.A. § 3105(c).

In considering the paragraphs quoted above, the trial court found that the foreign court had given effect to the underlined provision by directing the parties to "comply with each and every provision of the agreement." In other words, the court found that the foreign court had ordered the parties to go to another forum and have an alimony order entered. *See* opinion, 3/14/94 at 4, 6. This interpretation has no basis in either fact or law. Having failed to take effect "in that proceeding," [2] the provision no longer contained any obligation with which a court could order compliance. The trial court's rationale would suggest that the foreign court modified the agreement, and then ordered the parties to comply with its modification. A review of the above-quoted language, however, reveals that the foreign court nowhere purported to modify the parties' agreement.

Explaining its rationale, the trial court declared that the foreign court had "imputed knowledge" of the substance of the parties' agreement, and that by directing compliance it had merely given effect to their clearly expressed intent. *Id.* at 7. Obviously, what really happened is that the trial court, and not the foreign court, attempted to modify the parties' obligation by reinterpreting their agreement.

In upholding the trial court's misreading of the documents quoted above, the majority simply notes that "[t]he paramount goal of contract interpretation is to ascertain and give effect to the parties' intent." This principle is inapplicable here on two grounds. First, the intent of the parties is irrelevant to the

2. Neither Wife nor the trial court have attempted to suggest that the case at bar could be considered part of the same "proceeding" as the foreign suit which ended fourteen years ago.

trial court's recharacterization of the foreign court's decree. Second, the majority ignores the primary rule of contract analysis: look to the plain meaning of the words. The plain meaning of the words of a support agreement, like those of any contract, cannot be ignored under the guise of interpretation. *E.g., Valant v. Valant,* 437 Pa.Super. 635, 640, 650 A.2d 1087, 1089 (1994). When the provision failed to take effect at the required time, it dropped out of the contract. Our review of that document reveals neither an ambiguity nor an authorization by the parties that might excuse the trial court's unilateral modification of this private contract.

While we would therefore find the court's action improper, we also note that it was entirely unnecessary. The Domestic Relations Code provides in Section 3105 that "an agreement regarding matters within the jurisdiction of the court under this part" may be enforced as an order, unless the agreement provides to the contrary. 23 Pa.C.S.A. § 3105. While a Pennsylvania court may not *modify* an unmerged agreement for spousal support, it may still *enforce* such an agreement as if it were its own alimony order, provided that the agreement does not forbid such enforcement.

In defining the scope of jurisdiction, the Code states in Section 3104 that our courts may determine a matter related to a foreign divorce decree where the matter "has not been decided." 23 Pa.C.S.A. § 3104. We agree with the majority that the case of *Doyle v. Doyle* should ultimately be distinguished, but find that it remains relevant in part. In that case, the foreign court did not decide the matter of alimony because the parties had decided that matter for themselves. On their own, they decided to create an obligation to pay alimony—not the court, which had no power to impose such an obligation. When the wife sought to enforce that agreement in Pennsylvania as an order, however, we refused because such enforcement was against the terms of the agreement, which we interpreted according to Texas law. 355 Pa.Super. at 388–90, 513 A.2d at 485.

Like *Doyle,* the case at bar involves an agreement which has taken the matter of alimony out of the foreign court's

338

consideration. Looking to the terms of the agreement, then, we find that unlike the contract at issue in *Doyle,* this agreement *does* provide for the extra enforcement mechanisms, as the parties intended Pennsylvania law to control.[3]

We stress the importance of this distinction: the matter of alimony has been reserved here (and therefore our courts have jurisdiction to consider it) *not* because the foreign court issued no explicit ruling on the question, but rather because the parties removed the matter from that court's consideration. If the parties in *Doyle* had obtained the same decree, but had not entered into any support agreement, then we would still have refused to consider a request for an alimony order—but in that case because of a lack of jurisdiction, not because of a choice of law. Because the parties had not acted to remove that matter from the foreign court's jurisdiction, that court would necessarily have decided it *sub silentio* as part of the decree. No explicit ruling would have been necessary, because the question could have had only one answer in a Texas court: no court-ordered alimony. Therefore, we would have no jurisdiction to consider the issue any further.

On the contrary, the majority apparently holds that the reason the foreign court did not decide the matter in the case at bar was because it had no power to order alimony. Slip op. at 6. Under this reasoning, any divorce decree from a state that does not recognize alimony is subject to review and modification by our courts. We believe that the principles of comity and full faith and credit do not allow such a result.

3. Husband argues that Section 3105, which was enacted in 1988, may not be retroactively applied to the parties' 1981 agreement. We have already rejected this argument in *Jackson v. Culp,* where we found such application to be proper and held that "the amendment neither adds to nor subtracts from the substantive rights of the parties under their [agreement]; rather, it merely provides an additional procedural vehicle for the enforcement of their respective rights under their [agreement]." 400 Pa.Super. 519, 523, 583 A.2d 1236, 1238 (1990), *alloc. denied,* 529 Pa. 621, 600 A.2d 537 (1991); *see also Ashbaugh v. Ashbaugh,* 426 Pa.Super. 589, 599, n. 6, 627 A.2d 1210, 1215 n. 6 (1993).

Finding this approach more tenable, and more conforming to the principles of comity and our own precedent than the interpretation that the majority has adopted, we respectfully dissent from that portion of the opinion which affirms the trial court's transformation of the parties' private contract into a unilaterally modifiable order.